SNYDER *et ux v.* CAMPBELL.*

(Division A.   Dec. 13, 1926.)

[110 So. 678.   No. 26000.]

1. AUTOMOBILES. *Negligence in driving automobile fifteen miles per hour at time of striking pedestrian crossing street held for jury (Hemingway's Code. sections 5775, 5788).*

Under Hemingway's Code, section 5775, establishing maximum speed of motor vehicles as fifteen miles per hour, automobile driver's negligence in driving on street at speed of fifteen miles

per hour at time of striking pedestrian crossing street between intersections, is for jury, whether or not ordinance forbidding speed at greater rate than twelve miles per hour was repealed by virtue of section 5788.

2. Automobiles. *Regulations of use of streets by pedestrians reasonable and necessary because of automobile traffic.*

Regulations designating points for crossing streets and controlling pedestrians' movements at points where traffic is heavy, which before automobile's advent would have been arbitrary and unreasonable, may now, by reason of changed and complex conditions be entirely reasonable and necessary.

3. Automobiles. *Ordinance regulating pedestrians' use of streets held reasonable.*

City ordinance regulating places where pedestrians were permitted to cross streets *held* proper and reasonable exercise of police power.

4. Negligence. *Pedestrian's recovery for injuries by automobile should be reduced in proportion to negligence in crossing street.*

Recovery by pedestrian for injuries when struck by automobile should be reduced in proportion to pedestrian's negligence in attempting to cross street between corners, in violation of ordinance.

5. Automobiles. *Pedestrian's negligence does not relieve automobile driver from exercising reasonable care.*

Pedestrian's negligence in attempting to cross street does not relieve automobile driver of duty of exercising reasonable care and diligence to avoid injury.

6. Automobiles. *Driver must keep automobile under control and be on alert for pedestrians.*

Automobile driver must keep his machine constantly under control, and must continue on alert for pedestrians or others on streets.

---

*Corpus Juris-Cyc. References: Motor Vehicles, 28Cyc, p. 28, n. 33; p. 29, n. 39; p. 36, n. 15; p. 37, n. 22 New; p. 49, n. 46, 49; Negligence, 29Cyc, p. 561, n. 34; p. 657, n. 50; On reciprocal duty of pedestrian and driver of automobile to use care, see note in 51 L. R. A. (N. S.) 990; 2 R. C. L. 1186; 1 R. C. L. Supp. 723; 4 R. C. L. Supp. 146. On duty of operator of automobile to keep his car under control, see 2 R. C. L. 1184; 1 R. C. L. Supp. 722; 4 R. C. L. Supp. 146; 5 R. C. L. Supp. 133.

APPEAL from circuit court of Jones county, Second district.

HON. R. S. HALL, Judge.

Action by P. G. Campbell against George Snyder and wife. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

*Welch & Cooper* and *Roy P. Nobles,* for appellants.

Appellee says the unlawful speed caused the injury. He bases his cause of action thereon. There is no other ground of negligence alleged. Appellee offered in evidence an ordinance of the city of Laurel. It is urged that "on a tangent" means a street and that the speed here is shown to have been fifteen miles per hour. Assume that "on a tangent" means a street and that the ordinance was operative at the time, facts we will not concede except for argument; still we say that the speed had nothing to do with the accident.

Mrs. Snyder never saw appellee until he fell into the side of the car. Appellee was never in front of her. The excessive speed here, if there was such, saved the life of appellee rather than contributed to his injury. To be negligence, as to the party suing, the excessive speed must be the proximate cause of the injury. *Ry. Co.* v. *Carter,* 77 Miss. 516, 27 So. 993; *Clisby* v. *R. R. Co.,* 78 Miss. 937, 29 So. 913. The greatest injustice might follow from holding the excessive speed *per se* negligence whether the proximate cause of the injury or not.

It is not disputed that Mrs. Snyder did not see appellee. It was raining. Her windshield was wet. And had she seen him and had she been going twelve miles per hour, still she could not have prevented the accident. Appellee stepped out from between two cars. And he was endeavoring to cross at a point in direct violation of an ordinance of the city.

On the evidence the injuries received by appellee were the result of an accident and not due to the negligence of

appellants and certainly the negligence charged did not cause it. There should have been a directed verdict because it appears that the speed of fifteen miles per hour was not unlawful but in accord with the law.

Even if a speed in excess of twelve miles per hour was unlawful, it was because of the ordinance of the city of Laurel. Why should "on a tangent" be construed as meaning a "street" or an "avenue," we do not see. In every other part of the ordinance the words "street" or "avenue" are used.

We say that the net effect of the Motor Vehicle Act, chapter 116, Laws of 1916, was to repeal the above ordinance in all parts wherein the ordinance was in conflict with the act. The evident purpose of this statute was to insure uniformity throughout the state, doing this by taking away from the municipalities the power to act on the subjects dealt with.

On the other hand, the ordinance forbidding "jay walking" is an exercise of the police power of the city and is as reasonable in its nature and purpose as the ordinance pronounced valid by this court in *Watson* v. *Greenville*, 86 So. 450.

This cause should be reversed.

*Jeff Collins,* for appellee.

Appellants argue that the speed of the car had nothing to do with the accident; but it was as much the duty of Mrs. Snyder to see appellee undertaking to cross the street as it was the duty of the appellee to see Mrs. Snyder coming down the street. Mrs. Snyder could have stopped her car when she was eighteen feet away by applying her brakes, according to her own testimony.

Appellants argue that appellee would have fallen in front of the car and would have been run over had appellant been running at the rate of twelve miles per hour, but they seem to lose sight of the fact that appellants owed appellee the duty to check the speed of the car.

The testimony clearly shows that the speed of the car was the proximate cause of the injury. Appellant, Mrs. Snyder, is undertaking to excuse her rate of speed at the time that she hit appellee by saying that she did not see him because her windshield was wet. We do not understand how a railroad company could excuse itself for running its trains through a municipality at a greater rate of speed than six miles per hour and injuring some one by saying that the glass in front of the engineer was wet and blurred so that he could not tell when he got into the corporate limits or the six mile limit. If her windshield was wet so that she could not see anyone approaching from the right side, then it was certainly her duty to slacken her speed so as to take care of any contingency that might happen on that account.

Appellant argues that the city ordinance limiting the speed of automobiles at this particular place to twelve miles per hour was repealed by the Motor Vehicle Act, section 5775, Hemingway's Code, chapter 116, Laws of 1916.

If the court will notice the language of this statute and this ordinance, there is no conflict. The statute says "at a greater rate than is reasonable and proper." The city authorities under this ordinance decide that twelve miles per hour is "reasonable and proper" at this place or over twelve miles an hour is "unreasonable and improper." The statute fixes the maximum limit only. So it would certainly be within the legal and constitutional rights of the city authorities to fix the rate of speed in certain places at twelve miles per hour, or, as they say in this ordinance "not to exceed eight miles per hour" at certain places. This contention arose out of *Adler* v. *Martin* (Ala.), 58 So. 597. We also call the court's attention to *Ivy* v. *Marx*, 87 So. (Ala.), 813, as it is exactly in point. After reviewing this case, it is easy enough to see that the instructions refused by the court incorrectly state the law. It would not be negligence *per se* for a pedestrian to undertake to cross at any other

place than the place indicated by the city ordinance; and if the pedestrian uses due diligence in so undertaking to cross the street, he is not guilty of negligence. *Adler* v. *Martin,* 59 So. 604.

The case should be affirmed.

Argued orally by *Ellis B. Cooper,* for appellant, and *Jeff Collins,* for appellee.

COOK, J., delivered the opinion of the court.

The appellee, P. G. Campbell, brought this action in the circuit court of Jones county for damages for personal injuries alleged to have been sustained by reason of being struck by an automobile which was being negligently and carelessly driven by the appellant, Mrs. George Snyder, on the streets of the city of Laurel, Miss. There was a verdict and judgment against both Mr. and Mrs. George Snyder for the sum of one thousand dollars and from this judgment this appeal was prosecuted.

To the declaration the appellants pleaded the general issue, with notice thereunder that they would offer proof to show that the appellee, at the time of his injury, was endeavoring to cross Magnolia street between corners or street intersections, in violation of a city ordinance requiring all pedestrians to cross certain streets at the street intersections, or other designated points, which were plainly marked, and that, in attempting to cross Magnolia street in violation of said ordinance, and at a place other than one designated in said ordinance and marked off, the plaintiff emerged from behind a car parked on the curb without noticing the approaching cars or traffic, and was guilty of gross negligence, which contributed to his injury.

From the evidence it appears that Magnolia street in the city of Laurel runs north and south. Oak street crosses Magnolia street, and one block south of Oak street Central avenue crosses Magnolia street. In the

block fronting on Magnolia street and between Oak
street on the north and Central avenue on the south is
located the store of the Frank Gardner Hardware & Sup-
ply Company, while on the east side of Magnolia street,
and a little further south, is located the store of the Cham-
bliss Hardware Company. On the occasion that appel-
lee was injured he was at the store of the Gardner Hard-
ware & Supply Company, and desired to cross the street
to the store of the Chambliss Hardware Company. It
was raining at the time, and the appellee started across
the street, walking rapidly. He left the sidewalk at a
point between two automobiles which were parked at
the curb about ten feet apart, and at that moment Mrs.
George Snyder, one of the appellants, was driving her
husband's automobile along the street, going south from
Oak street toward Central avenue, and, as the appellee
emerged from between the two parked automobiles, the
man and the moving automobile came together, with the
usual result.

The appellee testified that, when he came out into the
street from between the two automobiles which were
parked at the curb, he looked both ways, and saw the
automobile approaching from the north; that the auto-
mobile was then about eighteen feet from him, and was
traveling about fifteen miles per hour down grade; that
he did not think he could cross ahead of the automobile,
and he then attempted to back up, but was unable to
avoid the car, and was struck by the front of the car, or
the fender thereof, and knocked unconscious.

The appellant, Mrs. Snyder, testified that she was
driving a Hudson coach, which is a closed car, south
along Magnolia street at a speed of about twelve miles
per hour; that it was raining, and on account of the ac-
cumulation of water on her windshield she could not see
ahead except through the space on the wind shield cov-
ered by the action of an automatic windshield wiper; that
she did not see the appellee at all until he fell against
the side of her car about the point of the location of

the windshield; the windshield being broken by the impact. Several other witnesses testified that the appellee started across the street, and, after he passed into the street from between the two parked cars, he stopped and swayed backward, and then apparently fell forward into the side of the moving automobile.

The appellee offered in· evidence an ordinance of the city of Laurel fixing a maximum speed limit of twelve miles per hour on.the streets of the city, while the appellant introduced in evidence an ordinance of the city providing for the marking of paths for pedestrians in crossing certain streets in the city, and providing that pedestrians in crossing said streets shall cross at the points so marked and between the lines; the parts of said ordinance which are here material being as follows:

"(1)    Be it ordained by the mayor and commissioners of the city of Laurel, Miss., that the commissioner in charge of streets shall cause to be marked out by white lines, or lines of any conspicuous color, such lines to be not ·more than eight feet apart, the path to be used by pedestrians in crossing at the north, south, east and west crossings at the intersection of Oak street and Magnolia street, . . . the north, south, east and west crossings of the intersection of Magnolia street and Central avenue; . . . that the commissioner in charge of streets shall cause the markings to be renewed from time to time to the end that such markings shall at all times be easily seen by all persons using the streets.

"(2)    That it shall be unlawful for any person to cross Oak street between the western boundary of Fifth avenue and the eastern boundary of Front street, or to cross Central avenue between the eastern boundary of Front street and the western boundary of Sixth avenue, or to cross Sixth avenue where it intersects with Central avenue, or to cross Commerce street at its intersection with Central avenue, or to cross Fifth avenue, Magnolia street, or Front street between the northern boundary of Oak street and the southern boundary

of Central avenue except at the points so marked between the lines so indicated.

"(3) That it shall be unlawful for any driver of any motor vehicle to cross the lines so marked, or any one of them, at a rate of speed greater than eight miles per hour.

"(4) That any person violating sections 2 or 3 hereof shall upon conviction be fined not more than one hundred dollars, or be imprisoned not more than thirty days, or both."

The appellants contend that the jury should have been peremptorily instructed to return a verdict in their favor, and in support of this contention several points are stressed, among them being that the speed of fifteen miles per hour, the maximum speed fixed by the evidence, was not unlawful, and that, assuming the speed of fifteen miles per hour caused the accident, still under the law such speed was not negligent. The argument of counsel on this point is that section 2 of the Motor Vehicle Act (chapter 116, Laws of 1916 [section 5775, Hemingway's Code], fixes a maximum speed limit of fifteen miles per hour in an incorporated city, town, or village, and that the ordinance of the city of Laurel fixing a maximum speed limit of twelve miles per hour, which was enacted in 1914, was repealed by the said Motor Vehicle Act.

Section 5788, Hemingway's Code, being section 15 of chapter 116 of the Laws of 1916, the Motor Vehicle Act, provides that—

"Local authorties shall not pass any ordinance, bylaw or resolution, in violation or in conflict with any of the provisions of this act; provided, however, that nothing contained herein shall curtail or abridge the right of local authorities to enact ordinances, resolutions or by-laws, or prescribe rules and regulations affecting motor vehicles which are offered to the public for hire and to maintain and enforce the same."

Conceding that, by reason of this provision of the Motor Vehicle Act, the city ordinance is repealed by the act, a question which it is not here necessary to decide, still the position of counsel upon this point is erroneous. Section 2 of the said chapter 116, Laws of 1916 (section 5775, Hemingway's Code), provides:

"No person shall operate a motor vehicle on a public highway or street, avenue or alley of any city, town or village in this state at a greater rate of speed than is reasonable and proper, having due regard to the traffic and use of the highway, or so as to endanger the life or limb of any person or the safety of any property, or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than fifteen miles per hour, or elsewhere in any incorporated city, town or village at a greater rate of speed than fifteen miles per hour, or elsewhere outside of any incorporated city, town or village at a greater rate of speed than thirty miles per hour, subject, however, to the other provisions of this act."

This provision does not fix an absolute maximum speed of fifteen miles per hour in an incorporated city, town, or village, but the maximum speed allowed under this provision on a public highway, or street, avenue, or alley of any city, town, or village, is such rate of speed as is "reasonable and proper, having due regard to the traffic and use of the highway," or such as will not "endanger the life or limb of any person or the safety of any property." A greater rate than fifteen miles per hour on a street, avenue, or alley of an incorporated city, town, or village is absolutely prohibited, but a maximum of fifteen miles per hour is not thereby permitted under all conditions. To drive a motor vehicle on the streets of a city at a rate of speed of fifteen miles per hour under some conditions of weather and traffic may be negligent, and a violation of the Motor Vehicle Act, and, we think, under the proof in this record, the question of

whether the driver of the automobile was guilty of neg-
ligence was one for the jury to determine.

The appellants assign as error the granting to the ap-
pellee of an instruction reading as follows:

"The court instructs the jury for the plaintiff that
the plaintiff had a right to go upon or cross the street
at any place he saw fit or desired to cross, regardless of
whether or not it was a regular place for pedestrians to
cross the street. And, if he used the proper vigilance in
going upon or crossing the street, he was guilty of no
negligence."

This instruction informs the jury that the appellee had
the right to violate at will the provisions of the city or-
dinance fixing points for pedestrians to cross the streets
and forbidding crossing at other points, and providing
a penalty for violating the provisions of the ordinance.
It in effect nullifies the ordinance, and must be held to be
reversible error, unless the ordinance is an unreasonable
exercise of the police power of the municipality, and con-
sequently invalid. The proper control and regulation of
traffic on the highways and at the congested centers of
population is a problem of increasing difficulty, and one
which is taxing the best thought of the governing author-
ities of our municipalities, and, since the advent of the
motor-driven vehicle and other means of rapid transit,
the great increase and concentration of population and
traffic makes regulation of such traffic absolutely neces-
sary for the protection of human life and of property,
and, in order to make such regulations effective, the
right to control the movement of pedestrians on the
streets at the congested centers of traffic must be recog-
nized and exercised. Regulations designating points for
crossing streets and controlling the movement of pedes-
trians on the streets where population is concentrated and
traffic is heavy, which, before the advent of the automo-
bile and the great increase of population, business, and
traffic, would have been arbitrary and unreasonable, may
now, by reason of the changed and complex conditions,

be entirely reasonable, and, in fact, necessary for the proper protection of life and property. In the recent case of *Village of Euclid, Ohio,* v. *Ambler Realty Co.,* 47 S. Ct. 114, 71 L. Ed. —, decided November 22, 1926, in discussing the validity of a building zone ordinance, the supreme court of the United States used language which is applicable here; the court saying:

"Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise."

We think the ordinance in question is valid as a proper and reasonable exercise of the police power of the municipality, and that in attempting to cross the street between corners, in violation of the provisions of the ordinance, the appellee was guilty of negligence. Consequently, the instruction above quoted was erroneous, and, since the negligence of the appellee in attempting to cross the street in violation of the provisions of the ordinance necessarily contributed to his injury, the ap-

pellants were entitled to the requested instruction that the plaintiff was negligent in attempting to cross the street in violation of the provision, and that any recovery allowed should be reduced in the proportion that the plaintiff's negligence bore to the defendant's negligence.

The fact, however, that the appellee was negligent in attempting to cross the street did not relieve the driver of the car of the duty of exercising reasonable care and diligence to avoid the injury. The driver of an automobile must keep his machine constantly under control, and must continue on the alert for pedestrians or others who may be upon the streets (*Ulmer* v. *Pistole,* 115 Miss. 485, 76 So. 522), and he must at all times operate his automobile at a rate of speed that is reasonable and proper under the conditions with which he is confronted, having due regard always to the traffic and use of the street. Whether or not the driver of the automobile here involved was, under the conditions then surrounding her, guilty of negligence is a question which must be solved by the jury under proper instructions.

For the errors herein indicated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*