WILSON v. STATE.

(Division B. June 3, 1935.)

[161 So. 744. No. 31692.]

**Earle L. Wingo** and **D. W. Holmes**, both of Hattiesburg, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Griffith, J.,** delivered the opinion of the court.

Mobile street, in the city of Hattiesburg, is crossed by the Mississippi Central Railroad tracks in a thickly settled and well built-up section of the city on both sides of the tracks along said street. Immediately alongside

the railroad tracks and across said street is a path which pedestrians were and are accustomed to use. About five forty-five p. m. on Saturday, December 15, 1934, Mr. Russie Holmes, an employee of a near-by industrial plant, working at night, was on his way to his work, and was using this path alongside the railroad track. When he reached Mobile street and a point about three or four steps into the street and along the path aforesaid, he was struck by an automobile driven by the appellant, and was so severely injured that he died therefrom.

The evidence shows that appellant was driving at the rate of from thirty to thirty-five miles per hour. He drove across the railroad track and onto the path which the deceased was pursuing without slowing down or sounding any alarm. When about twenty feet from the pedestrian, appellant's companion, sitting on the front seat with him, shouted to him that there was a man in front, whereupon appellant swerved to the left, but did not slacken his speed, and the pedestrian was hit and thrown some twenty or twenty-five feet across to the other side of the street. Appellant admitted that if he had been running only twenty miles an hour he could have stopped within ten feet; and, as already mentioned, his companion shouted to him when twenty feet away that there was a man ahead. Appellant was convicted of manslaughter, and appeals.

Section 5569, Code 1930, provides that no person shall operate a motor vehicle in any public highway or street, where the territory contiguous thereto is closely built up, at a greater rate of speed than twenty miles an hour. This is a statute enacted in the interest of the public safety and for the benefit of every member of the public. It is a legislative determination and declaration, the voice of the state itself, to the effect that at a higher rate of speed the driver cannot, according to common experience, have his motor vehicle under such control

as to prevent injuries to persons who are likely to be upon the highway or street in such closely built-up territory, especially at crossings, or at places commonly used as such. It is at such places a legal measure of due care, prescribed by the state, in respect to speed. When the motorist exceeds the speed fixed by law, there is a want of due care as measured by the legal standard; and, when the excess is so much above the legal rate of speed as to leave no doubt that the excess was distinctly intentional and willful, it is, of course, culpable in its want of due care, so far as concerns any injury which proximately results therefrom; and this means that, where a death occurs as a proximate cause of the willfully excessive speed, and which probably would not have occurred had the lawful rate of speed been observed, the statute, section 1002, Code 1930, comes into application; so that the homicide resulting from the culpable negligence is manslaughter.

And it is no answer to this inevitable conclusion that the statute is habitually violated in all parts of the state; and is even less of an answer that many motorists operate under the mistaken and selfish assumption that pedestrians have no rights in the highways or in the streets even at a crossing—the habitual violation or disregard of law and of the rights of others furnish no excuse to courts to refuse to enforce the law or to depart therefrom in a particular case. It is to be regretted that the statute in regard to speed in closely built-up areas is so poorly enforced; it is to be regretted that case after case has happened where there was no real defense against prosecution and yet the offender has been allowed to go unprosecuted; it is to be regretted that police watchfulness is generally confined to the main business area of cities and towns and is so nearly absent from those thickly settled residential areas where every day hundreds of motor vehicles habitually make from thirty-five to seven-

ty miles per hour with persistent indifference to the rights of others at crossings, even with indifference to the safety of little children who are endeavoring to make their way to school. All this is to be regretted, not only because of the danger in this habitual violation of right, but because, also, this failure of law enforcement tends to induce in the minds of the thoughtless and selfish, and who are therefore the more dangerous, the belief that there is no law against their conduct.

We feel, therefore, the natural hesitancy to enforce the written law upon this defendant when for the same offense and for no greater offense so many others have been permitted to go unwhipped of the law; but our duty is plain, as we see it, and we must allow the conviction and sentence to stand. That the appellant was willfully and intentionally violating the speed law in gross excess of its limits is established even by his own admission; that this violation was a proximate or concurrently proximate cause of the death, and that the death could and would probably have been averted had the motorcar been running within the rate of speed allowed by the law, is amply sustained by the evidence. We have examined the other assignments, and find nothing therein which would justify a reversal under this record.

Affirmed.