PLANTERS WHOLESALE GROCERY *v.* KINCADE.

In Banc. Feb. 5, 1951.

No. 37505 (50 So. (2d) 578)

714

Brewer & Brewer, and Watkins & Eager, for appellant.

Stovall Lowrey, V. J. Brocato, and Maynard, Fitzgerald & Maynard, for appellee.

Arrington, C.

W. S. Kincade, appellee, sued the Planters Wholesale Grocery, a Corporation, in the Circuit Court of Coahoma County for damages as a result of personal injuries received in a collision between his automobile and a truck belonging to the appellant Corporation. There was a

verdict for appellee in the sum of $30,000.00, from which judgment this appeal is taken.

The evidence in this case was that the appellant Corporation owned a large van truck, aluminum color, with dual wheels in the back, which truck on the morning of February 11, 1946, was sent to Memphis, Tennessee, for a load of groceries, in the charge of one Charlie Milby, its driver; that this truck left Memphis in the early afternoon of the same day heavily loaded, using U. S. Highway 61, and on its return trip to Clarksdale and before the truck reached Tunica, one of the rear tires went flat tire on one of the rear wheels, but he continued his extra tire put on, but he did not get the flat tire repaired. Continuing on his journey, he had another flat tire on one of the rear wheels, but he continued on his trip. After a short distance the remaining tire blew out. This happened about 6½ miles north of Clarksdale. Highway 61 is a paved highway, 20 feet in width, with a black line down the center dividing the lanes of traffic and had sufficient shoulders on each side estimated from 6 to 8 feet in width, broad enough for a truck to be parked thereon, and Milby, the driver of appellant's truck, drove the truck off the highway onto the shoulder. He then took the extra flat tire into Clarksdale, left it to be repaired and reported these facts to the president of appellant Corporation, Mr. J. E. Merritt, who instructed him to return to the truck and take off the flat tires, that he would bring him the repaired tire and pick the others up. Milby testified that it was about 4 o'clock in the afternoon when he reached Clarksdale and reported these facts to the president.

The evidence further shows that Milby returned to the truck and moved the truck from the shoulder of the highway onto the west half of the paved highway for the purpose of removing the flat tires; that the truck practically blocked the entire west half of the highway, or at least a greater part thereof. Mr. Merritt reached the scene with the repaired tire at about 5:30 P. M. At this time it

was dark, and it was testified that the lights on the truck were burning, but that there were no flags, fuses, or flares of any kind put out to warn the traveling public of the danger. The evidence further shows without dispute that there were several roads in the immediate vicinity of where the truck was parked, one a gravel road, 7 to 10 feet north of the parked truck, which was a good, gravel road and had been abandoned and was fenced off some distance from Highway 61, and which could have been used without inconveniencing anyone; that there was another road a quarter of a mile south on Highway 61, the direction in which the truck was headed.

Mr. Merritt, after bringing the repaired tire to the truck, picked up one of the flat tires, which had been removed from the truck by Milby, and returned to Clarksdale to get it fixed. Mr. Merritt admitted that there were no warning signals of any kind placed on the highway to warn the traveling public of the parked truck, and that the only precaution taken by him with reference to the danger was to leave Milby, the driver, with the truck.

The appellee, W. S. Kincade, who lived in Clarksdale, was in Memphis on this date, and left the city around 6 o'clock in the evening using U. S. Highway 61, the same route used by the truck. Upon leaving Memphis, he picked up a sailor who was hitchhiking. Mr. Kincade was driving a Lincoln automobile, which was in good condition, having just been in the repair shop on that day, with the exception that the speedometer was not working for the reason that the repair shop did not have a chain with which to fix it. The appellee was traveling at rate of 45 to 50 miles an hour, and while so driving and nearing the scene of the parked truck, a car, traveling north, with bright lights, signaled him for his dimmers. He responded by dimming his lights, but the car traveling north did not dim its lights, which were so bright they blinded the appellee. He began immediately to slow down to a speed estimated at 25 miles an hour, when appellant's

parked truck, without lights or warning signals of any kind, suddenly loomed up before him. He immmediately applied his brakes, but saw that he was not going to be able to stop in time to avoid the truck, and as he neared the truck he saw a hole to his left between the truck and the approaching car; he drove into this hole, his car hit the truck, damaging the car and killing the sailor who was riding with appellee, and from which collision the appellee received serious and painful injuries.

A picture of appellee's automobile was introduced in evidence and from this picture the front part of appellee's car got through the hole, but the top part hit the truck. The time of the collision was estimated at 7:30 P. M., and before Mr. Merritt had returned with the extra tire. Appellee testified that he was approximately the distance of the back of the courtroom to the truck at the time the truck loomed up before him. The distance was measured at the instance of appellant's attorneys and found to be 74 feet. He also estimated his speed at the time he pulled in the hole trying to avoid the wreck at 15 miles an hour.

Milby, the driver of the truck, testified that he did not attempt to flag or do anything to warn the traveling public of the danger of a parked truck; that he saw the car coming and heard the screech of the brakes at the time of the collision; that he had left the rear of the truck and gone to the cab, propped his foot upon the running board, lighted a cigar, and was talking with two women who were in the truck at the time of the accident.

All the above facts are admitted or not contradicted with the exception of whether or not the truck had on any lights. The evidence on the part of appellant was that the lights were on. The testimony of the appellee and other witnesses was that there were no lights on the truck. This conflict was for the jury.

The appellant assigns as error that the lower court erred in refusing the requested peremptory instruction; erred in the refusal and granting of a number of instruc-

tions respectively to the appellant and appellee, erred in overruling motion for a new trial.

Appellant argues that the court erred in refusing the requested peremptory instruction on the ground that the proximate cause of the accident was not the negligence of the appellant; that the proximate cause of the accident was the gross negligence of the appellee combined with the gross negligence of the driver of the approaching car, that the appellee was guilty of gross negligence in driving into the hole instead of stopping or hitting the truck, or, in other words, that he assumed the risk and that the accident was the result of his own negligence.

A reading of the statement of facts herein involved shows that the lower court committed no error in overruling the requested peremptory instruction. The rule has been stated may times by this Court, and is, as held in the case of Dean v. Brannon, 139 Miss. 312, 104 So. 173, that in determining whether appellants were entitled to a directed verdict, every fact favorable to appellee which evidence established either directly or by reasonable inference must be considered as proved.

The appellant contends that the "sole proximate cause of the accident was the combined gross negligence of appellee and the gross negligence of the driver of the approaching car; that the negligence of appellant, if any, merely furnished a condition or occasion; that the combined gross negligence of appellee and of the third party became the efficient intervening proximate cause of the accident; that the independent, illegal acts and gross negligence of the appellee and the third party could not have been reasonably foreseen or anticipated and such intervening agency became the sole proximate cause of the accident." In answer to this contention, we quote from the case of Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890, 891 where the Court said: "Without attempting to define proximate cause in such terms as will be applicable to all states of fact—for to do so is practically impossible—it will be sufficient to say

that ██ ██ the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done. ██ ██ In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and, although the author or authors of such cause or causes may also be liable therefor. 29 Cyc. 492-496, inclusive, and authorities there cited. 'If a defendant is negligent, and his negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury.' Harrison v. Kansas City Elec. Light Co., 195 Mo. 606, 93 S. W. 951, 7 L. R. A., N. S., 293.''

This rule has been consistently followed. In Solomon et al. v. Continental Baking Co., 172 Miss. 388, 160 So. 732, 733, which is very similar to the case here, the Court cites the Cumberland Tel. & Tel. Co. v. Woodham case, supra, and further says: ''One of the purposes of the statute requiring an automobile to be equipped with a rear red light is to prevent collisions of the character here, and the driver of an automobile violating this statute should realize the probability that one driving another automobile would approach him from the rear without himself observing the requirements of the 'law of the road'. In such a case, if the former's negligence contributed to a collision of the automobiles, he is liable to

the other, under our concurrent negligence statute, section 511, Code of 1930, for his proportion of the damages sustained by such other.''

To the same effect is the holding in the case of Gulf Refining Co. v. Brown, 196 Miss. 131, 16 So. (2d) 765, 769. In this case the Court quoted with approval what was said in the Cumberland Tel. & Tel. Co. v. Woodham case, supra, and cited the case of Public Service Corp. v. Watts, 168 Miss. 235, 150 So. 192, where the Court said: ''If the force which causes the injury is put in operation or motion by what is the negligence of the defendant, and that force or motion is still in progress or operation and has not lost its identity and continuity as such when the injury occurs, then the negligence which (started) the injurious force in operation is the proximate cause.

██ The appellant argues that the court erred in refusing an instruction that the appellee, as a matter of law, was guilty of contributory negligence. The court committed no error in refusing this instruction as it was not based upon the Contributory Negligence Statute, Section 1454, Code of 1942.

Appellant argues that the court should have granted an instruction telling the jury that the appellee was guilty of negligence as a matter of law for the reason that the appellee did not have his automobile under control, and cites the case of Terry v. Smylie, 161 Miss. 31, 133 So. 662, 664, where the Court said: ''He has no right to assume that the street is clear. He has no right to assume that all other persons are obeying the traffic laws. Whenever he finds himself so blinded by the lights of another car, or from any other cause, so that he cannot see in front of him a distance within which he can stop his car at the rate of speed he is traveling, he should at once bring his car within such speed. Ulmer v. Pistole, 115 Miss. 485, 76 So. 522; Snyder v. Campbell, 145 Miss. 287, 110 So. 678, 49 A. L. R. 1402; Frazier v. Hull, 157 Miss. 303, 127 So. 775; Kern v. Knight, 13 La. App. 194, 127 So. 133.''

The case of New Amsterdam Casualty Co. v. Ledoux et al., 159 P. (2d) 905, 906, the Circuit Court of Appeals, Fifth Circuit, is a Louisiana case, and is practically identical with the case at bar. In this case the Court said: "Appellants contend, however, that Ledoux was guilty of negligence that proximately caused the accident in that he failed to stop his vehicle when he met oncoming vehicles with bright lights that impaired his view of the road ahead, and that he should have seen the ambulance parked in the road ahead of him in time to have stopped and avoided the accident. Reliance is placed upon the general rule prevailing in Louisiana that 'when the driver of an automobile is blinded by the lights of another car or by dust, smoke, etc., that it is his duty to reduce the speed of his car to where he can bring it to a stop immediately if faced with an emergency and it is his duty to bring his car to a complete stop if necessary.' Harper v. Holmes, La. App. 189 So. 463, 465. The driver of an automobile on the public highways at night 'must keep his car under such control as to be able to bring it to a complete stop within the distance which his headlights project in front of him.' Goodwin v. Theroit, La. App., 165 So. 342, 344. The Louisiana courts have made it clear in many cases that the general rule is not a hard and fast one which will operate to preclude recovery in every case in which a motorist fails to stop and collides with an object on the highway. In each case the particular facts and circumstances must be considered and, 'in the final analysis, the facts of each case will determine the question of negligence.' Herring v. Holicer Gas Co., La. App., 22 So. (2d) 868, 871, and cases cited.

"Under all the facts and circumstances of the case at bar it cannot be held that as a matter of law Ledoux was guilty of negligence or contributory negligence such as would bar recovery. Indeed, the evidence is sufficient to support a finding that he was driving along the highway in a careful manner and that he acted as a reasonably

prudent driver would have acted in the emergency confronting him when he saw the ambulance blocking his way."

In the instant case the appellant requested and was given a proper instruction on contributory negligence. The appellant was granted a number of instructions which were liberal indeed as to the operation of appellee's car. Instruction 4 was as follows: "The Court instructs the jury for the defendant that if you believe from the evidence that the plaintiff, W. S. Kincade, at the time of the collision between his automobile and the truck of the Planters Wholesale Grocery, was driving his automobile at a greater rate of speed than would permit him to avoid striking the truck of said Planters Wholesale Grocery when it came within the range of the lights on the Lincoln automobile, then in that event W. S. Kincade was guilty of negligence; and if you further believe from the evidence that the negligence of W. S. Kincade was the sole proximate cause of the collision and any injuries resulting to him, then it is your sworn duty to find for the defendant."

Instruction 14 was as follows: "The court instructs the jury for the defendant that if you believe from the evidence that W. S. Kincade was blinded by the lights of an approaching car, then it was his duty to at once have reduced the speed of his car until he could ascertain whether his way was clear or whether there was anything in the road ahead. And if you further believe from the evidence that he did not reduce the speed of his car until he could ascertain whether his way was clear, then such act on the part of W. S. Kincade was negligence, and if you believe that said negligence, if any, was the sole and proximate cause of the accident then it is your sworn duty to find for the defendant."

It is also argued by appellant that the court erred in granting an instruction to the plaintiff permitting the jury to award punitive damages. In view of the gross and inexcusable negligence of the appellant

here, this instruction was proper. In Teche Lines, Inc., v. pope, 175 Miss. 393, 166 So. 539, 540, the Court said: "It is the firmly established law in this state that punitive damages are recoverable not only for willful and intentional wrong, but for such gross and reckless negligence as is, in the eyes of the law, the equivalent of willful wrong. Godfrey v. Meridian Ry. & Light Co., 101 Miss. 565, 568, 58 So. 534. There is no precise definition of gross negligence, but one of the approximate definitions may be thus expressed: Gross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences. without the exertion of any substantial effort to avoid them. The facts of this case, as the statement thereof reveals, bring it well within that definition and principle. Compare Wilson v. State, 173 Miss. 372, 161 So. 744, wherein we affirmed a manslaughter conviction, as for culpable negligence, upon a state of facts in which the negligence was no more culpable than in the case now before us."

 The appellant argues that the damages are excessive. The evidence in this case shows that the appellee received serious and permanent injuries, that at the time of the collision he received cuts, bruises, lacerations, and broken ribs, and that he continued to suffer as a result of an injury to his spine, and that after being treated by a number of doctors he underwent an operation upon his spine involving the fifth and sixth cervical vertebrae. This was a serious operation and consisted of removing the covering of the spinal canal and removal of the ruptured discs. The testimony of the surgeon who performed this operation was to the effect that the appellee was permanently injured. According to the evidence, appellee is now suffering from arthritis and has partially lost the use of his right and left arm, and he continues to suffer much pain as a result of his injuries.

The evidence further shows that appellee at the time of the collision was forty-one years of age, and that as a result of his injuries his earning capacity has been impaired, and that he has been incapacitated to a great extent. The verdict was for $30,000.00. This is a large verdict, but taking into consideration that the jury was authorized to find punitive damages and that this was a matter solely within their discretion, we cannot say that the verdict is excessive. The Court, in Teche Lines, Inc. v. Pope, supra, where this question was involved, said: "The verdict was for $15,000. This is a larger amount than any one of us would have voted for had we been on the jury. But, as we have often heretofore said, that is not the test. The state of the record is such that had there been no allowance of punitory damages and the verdict had been for half the stated amount as compensatory damages, we would not be authorized to interfere. Assuming, therefore, that half, or even more than half, the amount of the verdict represents a punitory award, we are still not authorized to interfere. We call attention to Yazoo & M. V. R. Co. v. Williams, 87 Miss. 344, 355, 39 So. 489, 491, wherein it was said: 'It is the long settled and uniformly adhered to rule in our jurisprudence that the amount of such punitory or exemplary damages is solely within the discretion of the jury, and, no matter what the sum of their finding might be, interference therewith, unless for exceptional causes, is discouraged . . . the reason being that, as the jury are the sole judges of the amount which ought properly to be assessed in order to inflict adequate punishment, the courts should scrupulously avoid any undue interference with their prerogative'."

The appellant also argues that the court erred in refusing the appellant an instruction that the appellee could not recover for hospital and doctors' bills. There was no claim made in the declaration for these expenses, and no evidence to this effect was introduced, hence,

there was no error in refusing this instruction as there was no evidence to base it upon.

The appellant also argues that the court erred in granting appellee Instructions Nos. 2, 5, and 6.

██ ██ Instruction No. 2 was based upon Sec. 8256, Code of 1942, of the uniform Highway Traffic Regulation Act, which requires trucks to carry flares, fuses, flags, etc. Said instruction is as follows: "The Court instructs the jury for the plaintiff that the defendant, Charlie Milby, did not place any flares, fuses, or other signals on the highway after the truck belonging to Defendant, Planters Wholesale Grocery, was parked on the occasion in question and such failure was contrary to the law of the State of Mississippi and was negligent, and if you believe from a preponderance of the evidence that said negligence was the proximate cause of the injuries to the plaintiff you shall return a verdict for the plaintiff."

Instruction No. 5 was based upon Section 8215, Code of 1942, which requires any vehicle parking upon a highway to leave a width of at least 20 feet of the highway opposite such standing vehicle for the passage of other vehicles. Appellant argues that this instruction was erroneous for the reason that subsection (b) of the Statute provides that the above shall not apply to a vehicle which is disabled to the extent that it is impossible to avoid stopping same.

Instruction No. 6 informed the jury that it was the duty of parties driving motor vehicles on the highways to obey the laws of the State with reference to the use of such public thoroughfares.

We are of the opinion that the granting of these instructions was proper for the reason that the appellant admitted that it did not put out any flares, fuses, or warnings of any kind, and also admitted that it had the west half of Highway 61 blocked, or a greater part thereof, and, further, that this truck was not disabled so that it was impossible to move it, as provided for in subsection (b) of Section 8215, Code of 1942, as Milby, the

driver of the truck, testified that he moved the truck from the highway off onto the shoulder, and then moved it from the shoulder back onto the highway, and for the further reason that it is not disputed that there was a gravel road 7 to 10 feet immediately back of him, which road he could have used.

This holding does not conflict with the opinion of the Court in Teche Lines v. Danforth, 195 Miss. 226, 12 So. (2d) 784. The holding of the Court in this case with reference to the statute involved was that when 20 feet of clearance was impossible that the vehicle should turn as far to the right as practical, including sound and safe shoulders. The granting of these instructions was not error. City of Greenville v. Laury, 172 Miss. 118, 159 So. 121; Wilburn v. Gordon, Miss., 45 So. (2d) 844.

A large number of instructions were given in this case, and considering them all together the jury was furnished a sufficient and correct guide as to the law of the case.

██ ██ The appellant argues that the lower court erred in overruling a motion for a new trial on the ground that the jury in deliberating on the case after it had been submitted to them considered other matters not brought out in the trial of the case. The appellant in the lower court, upon the hearing of a motion for a new trial, attempted to show by testimony of the jurors who tried the case that they discussed in the jury room the question of liability insurance of the appellant, also that the question of medical and hospital bills of the appellee was likewise discussed. Objection was made to the testimony of the jurors offered, and was sustained by the court. This was not error, as it was an effort to permit the jurors to impeach their own verdict. The High Court of Errors and Appeals, in the year 1839, in the case of Prussel, et al. v. Knowles, 4 How. 90, with reference to a juror impeaching his verdict said: "The rule is well settled, that a juror shall not impeach his verdict, and has been fully recognized in this court. If, in ordinary cases, the verdict is contrary to evidence or the law, a

new trial may be granted. But this should appear from the evidence given on the trial, and not by discoveries made by exploring the recesses of the jury room. Such a practice could not be tolerated without inviting the losing party in all cases to tamper with the jury, and few verdicts could stand. Courts of justice have, therefore, adopted the rule that a juror shall not be permitted to repudiate his own conduct, or to invalidate his verdict.''

In Taylor v. State, 52 Miss. 84, the Court said: ''It was made ground for the motion for a new trial in the court below that one of the jurors, who had been the former master of the defendant, stated in the juryroom that he knew the accused had at least three wives. This was made to appear by the affidavit of a party to whom this juror told it after the conviction, stating at the same time that this statement by him to the jury had produced the conviction. However improper it may be for jurymen to discuss in their deliberations anything outside of the testimony it would be erecting too high a standard, and would result in a defeat of justice, to set aside their verdicts because they will do so. The surmise of the juror in this case, that the fact stated by him had caused the conviction, could not of course be considered by the court.''

In Shaw v. State, 79 Miss. 577, 31 So. 209, the Court held: ''Jurors may not be heard to impeach their verdict by their own misconduct, or by what took place in their private room, or because of the grounds on which they found their verdict, but are competent to show the misconduct of others.''

In Ulmer v. Pistole, supra, it was held by the Court: ''The appellant assigns as error the verdict of nine jurors, as void and unconstitutional; that the verdict of $10,000 is excessive; and that it was impeached by one of the jurors. As to these last contentions we hold that a verdict in civil cases returned by nine jurors is valid and constitutional, and the verdict cannot be impeached by

any one of the twelve jurors on the jury. [115 Miss. 485, 76 So. 524.]''

We therefore are of the opinion that, for the reasons set out above, the lower court committed no error in overruling the motion for a new trial.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and, for the reasons therein indicated, the case is affirmed.

McGehee, C. J. (dissenting in part),

I concur in the majority opinion herein on the question of liability, but I think that the amount of the judgment is too large. The question of both actual and punitive damages was submitted to the jury and we are without any guide for determining the reasonableness of the amount allowed as actual damages or as to the amount awarded as punitive damages since the verdict is single and in the total sum of $30,000.

It would have been competent on an issue of punitive damages for the plaintiff to have shown the financial worth of the defendant, and while the plaintiff was not required to make such proof, the result of his failure to do so left the jury without any guide for determining what amount, if any, should be assessed as a reasonable fine in the nature of punitive damages. Such damages are not allowed as compensation to the plaintiff, but to deter others from acts of gross negligence, and in determining what sum would be sufficient to serve the end desired the ability of the defendant to pay should be taken into consideration. The defendant is a local wholesale grocery company and so far as this record discloses there may have been at least one-third of the verdict awarded as punitive damages. On the other hand, the jury may have intended to assess the entire amount as

actual damages. In either event, the finding would, in my opinion, be excessive.

Furthermore, if we place the plaintiff's physical disability at the full percentage testified to by his own doctor, and then consider the fact that he was guilty of contributory negligence in undertaking to go between the truck and the oncoming car instead of stopping his own car (if he were driving at not more than twenty-five miles per hour as he claimed), the verdict would still seem to show that the jury did not mitigate the damages as authorized by the contributory negligence instruction granted in favor of the defendant; and did not give due consideration to the undisputed fact that his earning capacity has only been partially impaired.

On the other hand, if the defendant were driving from forty-five to sixty miles per hour, as the demolished condition of his Lincoln automobile clearly indicated, (since it struck only the smooth corner of the boxcar shaped body of the grocery truck), he was guilty of contributory negligence in failing to reduce his speed when he first saw the oncoming automobile which met the truck as he undertook to pass it.

Roberds, J., joins in this dissent.