Mrs. Imogene Toombs PARKINS,
Appellant,

v.

Sam Lawrence BROWN, Appellee.

No. 16127.

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1957.

Dale H. McKibben, John C. Sullivan, Jackson, Miss., for appellant.

John M. Grower, Jackson, Miss., William S. Cain, L. G. Spivey, Canton, Miss., Brunini, Everett, Grantham & Quin, Jackson, Miss., Ray, Spivey & Cain, Canton, Miss., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The question presented by this appeal is whether the Court below committed error in directing the jury to return a verdict in favor of appellee Brown in a personal injury suit brought against him by appellant Parkins. Defendant had driven his 1950 Oldsmobile into plaintiff when she was crossing United States Highway 51 in the early hours of the night of December 26, 1954. The Court below first submitted the question of negligence to the jury, but upon being advised after several hours of deliberation that the jury had not reached a verdict, it discharged them and sustained defendant's motion for a directed verdict.

Having in mind that "in determining whether [defendant was] entitled to a directed verdict, every fact favorable to [plaintiff] which evidence established either directly or by reasonable inference must be considered as proved,"[1] examination of the record reveals that credible evidence was introduced from which the jury would have been warranted in finding the following facts:[2]

Plaintiff left Jackson in the afternoon of the day after Christmas en route to Memphis to visit her child. She drank three bottles of beer between three and four o'clock that afternoon. About five thirty o'clock she employed a taxicab to take her to the outskirts of Jackson in the hope that she could walk along the highway and catch a bus, having in the back of her mind doubtless that someone might pick her up. A man in a pick-up truck came along and offered her a ride, which she accepted. He was headed for Allison's Wells, a point some thirty miles north of Jackson. He drove north along Highway 51 until he reached his turn-off road, and he turned to the left and discharged plaintiff at the edge of the asphalt road leading from Highway 51 to Allison's Wells and at a point on the left or west side of Highway 51.

At the moment, a long line of automobiles was traveling south on Highway 51, and she waited until the last one had passed. Thereupon she started diagonally across 51 to go to the Triangle Inn, a store and gasoline station, where she

1. Planters Wholesale Grocery Co. v. Kincade, 1951, 210 Miss. 712, 50 So.2d 578; and see Dawson v. McWilliams, 5 Cir., 1944, 146 F.2d 38; Banks v. Associated Indemnity Corp., 5 Cir., 1947, 161 F.2d 305; Atlantic Greyhound Corp. v. Crowder, 5 Cir., 1949, 177 F.2d 633; and cf. The Greyhound Corporation v. Dewey, 5 Cir., 1957, 240 F.2d 899.

2. The important facts are quite simple and the witnesses few, although the testimony contained in the record covers a wide field. For example, much testimony was introduced concerning the movements and activities of plaintiff on the afternoon before her journey was begun and her domestic and other relationships. That proof can be material only as and if it tends to prove the extent of her drinking beer or other intoxicants during, or prior to, her trip.

The proffered evidence as to the financial condition of defendant will be competent only if the evidence develops a case warranting the jury in awarding punitive or exemplary damages. Pullman Palace Car Co. v. Lawrence, 1897, 74 Miss. 782, 22 So. 53; and cf. Jones v. Carter, 1942, 192 Miss. 603, 7 So.2d 519.

had been advised she could obtain a bus ticket and wait for the bus. She had her coat on one arm and a suitcase in the opposite hand. She had walked twenty-one feet [3] to the black (middle) line in the highway and had proceeded about half way across the right or northbound lane when defendant's car struck her.

The asphalt paving on the Allison's Wells road ended as it reached Highway 51, forking at that point so that motorists could gain easier access to and from Highway 51. Across Highway 51 was the Triangle Inn and nearby was a warehouse. Two local farm roads, one graveled, came together near the store which was sitting back some 110 feet on the east side of Highway 51 and separated therefrom by a graveled apron. Mississippi Stop signs were in place at the entrances to Highway 51 from the Allison's Wells paved road and from the local gravel road.

Defendant and his wife were traveling north on concrete Highway 51 at a speed of about 45 miles an hour with the headlights dimmed, the road being straight and slightly upgrade. He had lived all of his life near this intersection and was familiar with it. He normally drove in daylight hours at about fifty miles per hour, but had slowed down somewhat upon meeting the string of cars and because he was accustomed to find loose stock along the highway.

He did not see plaintiff at all until she was at about the black line marking the entrance to the lane in which he was driving. Apparently plaintiff did not see defendant's car until she was past that point. Her diagonal route towards the store threw the approaching car somewhat to her rear. She was struck when about in the middle of the ten-foot northbound lane of Highway 51, about 26 feet from the point she had entered, and was

knocked off of the highway to the east. Defendant had cut his car sharply to the left when he saw plaintiff about twenty feet in front of him. Defendant did not apply his brake until he had struck plaintiff.

Plaintiff suffered serious and permanent injuries including broken pelvis and fractures of bones in her leg above and below the knee; she had spent most of the time for about nine months in various hospitals undergoing a series of operations, and the prognosis of the bone specialist was that she would suffer a permanent partial loss of function of the injured leg.

Besides the lights on defendant's automobile, the intersection was lighted to some extent by a large electric sign advertising Allison's Wells situated about fifty feet from the highway on the west side, and two lights on the store on the east side. An engineer's drawing depicting the scene of the accident and a number of photographs were before the jury to assist them in getting an accurate grasp of the situation and an intelligent appreciation of the testimony.

Under the facts outlined, we think it was error for the Court below to direct a verdict in favor of the defendant. Ordinary care required that defendant keep a never-ceasing lookout ahead of him and that he see what was within his vision, and his failure to see what he could have seen by the exercise of due diligence does not absolve him from liability. Reasonable care also required that he operate his automobile at such a speed as would permit him to take the steps necessary to avoid colliding with a pedestrian using the road within his length of vision ahead as provided by his headlights. This duty was heightened by the presence of the intersection with which defendant was fully familiar.[4]

---

3. The southbound lane of 51 at that point was 16 feet wide and five feet of asphalt pavement joined the concrete along the neutral ground between the two forks of the Allison's Wells road. The northbound lane of 51 was 10 feet wide.

4. § 8176 of Title 30, Art. 6, of the Mississippi Code of 1942, 1954 Cumulative Supplement, provides: "The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection * * * or when special

The Supreme Court of Mississippi has stated the applicable rule in Terry v. Smylie, 1931, 161 Miss. 31, 133 So. 662, 663–664:

"* * * the evidence showed without dispute that if the car in which appellants were driving had been operated with due care, the injury would not have occurred, notwithstanding the appellee may have been guilty of contributory negligence. * * * He [the operator of an automobile] must at all times drive his car at a reasonable rate of speed, in view of the conditions with which he is confronted. He has no right to assume that the street is clear. He has no right to assume that all other persons are obeying the traffic laws. Whenever he finds himself so blinded by the lights of another car, or from any other cause, so that he cannot see in front of him a distance within which he can stop his car at the rate of speed he is traveling, he should at once bring his car within such speed * * *." [5]

According to defendant's wife, his normal maximum daytime speed was fifty miles an hour, and yet he did not, on this occasion, reduce below forty-five miles although he was meeting a long line of cars, which, incidentally, both defendant and his wife said did not tend to blind them. This line of cars in the south lane of the highway was traveling also at about forty-five miles per hour.

The civil engineer figured out a schedule showing where defendant's car was with reference to the last of the southbound cars based upon various assumed speeds of cars and pedestrian. Aside from this schedule there was no dispute about the fact that plaintiff did not leave the curb around the neutral ground on the west side of 51 until the last southbound car had passed her, and this curb was twenty-one feet from the black line separating the north and south lanes. She was moving at a normal pedestrian rate of about three miles per hour. Defendant's car and the cars in the south lane were moving substantially fifteen feet to every foot traversed by plaintiff. On that basis, the last car in the southbound group was three hundred fifteen feet south of plaintiff when she reached the black center line.

By the same figures, defendant's car was substantially three hundred fifteen feet south of the same point when plaintiff entered the paved highway. Assuming that his view of plaintiff was obscured for a brief interval by the cars in the south lane, it is clear that he had an open and unobstructed view of her one hundred fifty or more feet after the last southbound car had passed him. Why he did not raise his lights at that point, or why he did not see plaintiff until he

---

hazard exists with respect to pedestrians or other traffic, or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements."

5. The Mississippi Court quoted a good portion of the above in Planters Wholesale Grocery Co. v. Kincade, supra. In addition, it quoted with approval from our case of New Amsterdam Casualty Co. v. Ledoux, 5 Cir., 159 F.2d 905, 906. Another good expression of the rule by the Mississippi Supreme Court is found in Frazier v. Hull, 1930, 157 Miss. 303, 127 So. 775, 777: "The driver of a motor vehicle has not the right to a clear road, but must anticipate the presence of persons and vehicles thereon, and must

at all times drive at such a rate of speed as will enable him to avoid injury to such persons and vehicles when they come, or should come, under his observation. * * * From this it necessarily follows that it is negligence to drive an automobile, at night, at a greater rate of speed than will permit the driver thereof to avoid injury to persons or vehicles when they come within the range of the lights on the front of the automobile. 1 Berry, Automobiles (6th Ed.) § 186; 1 Blashfield's Cyc. of Automobile Law, p. 350, § 17; 14 A.L.R. 794, note. Had the appellee observed this rule, the accident would not have occurred; and, as her own evidence disclosed that she did violate it, the jury should not have been permitted to find that her negligence did not contribute to the appellant's injury."

was only twenty feet from her, or why he did not apply his brakes or begin to slow down his car until he had struck her, remained unexplained.

It being clear that there was ample evidence from which the jury could have found that defendant was negligent, it is not important to discuss whether plaintiff was also negligent. It is provided, by § 1454 of the Mississippi Code of 1942, that: "In all actions hereafter brought for personal injuries * * * the fact that the person injured * * * may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured." [6]

■■ The argument that defendant was called upon to act in an emergency does not impress us. The doctrine applies only if and when the pedestrian suddenly appears in the motorist's lane of travel at an intermediate or unexpected point.[7] Plaintiff was crossing the highway at a point where she had a right to be, and she entered the intersection when defendant's car was three hundred or more feet away. Under Mississippi law, even a vehicle required to stop at this intersection could proceed into the highway unless the competing vehicle on the through highway had entered the intersection or was "approaching so closely on said through highway as to constitute an immediate hazard * * * "[8] There was no legal reason why plaintiff should have considered a car three hundred feet away from the intersection when she entered it as an immediate hazard; and reasonable care would require that defendant anticipate the probable presence of persons or vehicles using the intersection, particularly after the long line of cars had just passed.[9]

In our opinion, the evidence as to all of the phases of the reciprocal duty of pedestrian and motorist presented issues for jury decision and, for the error of the Court below in taking the case from the jury, it is reversed and remanded.

Reversed and remanded.

---

6. And the following section, 1455, reads: "All questions of negligence and contributory negligence shall be for the jury to determine." See, also, Crosby Lumber & Mfg. Co. v. Durham, 1938, 181 Miss. 559, 179 So. 285, 286, 854, and Snyder v. Campbell, 1926, 145 Miss. 287, 110 So. 678, 49 A.L.R. 1402.

7. Cf. Annotation "Automobiles—Clear Distance Ahead," 31 A.L.R.2d 1424, 1434 et seq. And cf. McMinn v. Lilly, 1952, 215 Miss. 193, 60 So.2d 603; and Avery v. Collins, 1934, 171 Miss. 636, 157 So. 695, 158 So. 552.

8. See § 8197, Mississippi Code of 1942.

9. We have examined the cases cited by the defendant and do not think they control here. A number of Mississippi cases are relied upon which hold it to be the duty of the trial judge to grant a peremptory instruction if there is no evidence of negligence on the defendant's part. We do not have any situation here which resembles those involved in the cases cited. Nor do we think the cases from this Court relied upon by the defendant sustain the action of the Court below. In Carey-Reed Co. v. Carney, 5 Cir., 1941, 117 F.2d 108, defendant was driving his car at a speed of from thirty to thirty-five miles per hour on a road flanked by cotton and corn fields. A drunken man walked diagonally across the road and into the path of the car. The driver sounded his horn, reduced his speed, and cut his car off of the road and into the ditch, and the impact took place about the time the car entered the ditch. General Contract Purchase Corp. v. Armour, 5 Cir., 1942, 125 F.2d 147, was a case where the driver of the car was the only witness. The decedent drove his unlighted bicycle suddenly from an obscure country road and ran into the fender of the motorist's car at a time when he was swerving as rapidly as possible away from the bicycle. We do not have such a situation here. Plaintiff did not dart onto the road, but came normally onto it from a paved road and was within the clear view of defendant, his lights being aided by the fact that plaintiff was between him and a large lighted sign, for a considerable interval. Even if the jury had thought that she was contributorily negligent in not looking towards the oncoming car, there was ample proof that defendant ought to have seen her in time to stop his car, or change its direction, or blow his horn, or take other steps to prevent striking plaintiff.