GULF REFINING Co. *et al. v.* BROWN.

(In Banc. Feb. 14, 1944.)

[16 So. (2d) 765. No. 35526.]

Green & Green, of Jackson, and R. J. Conner and J. S. Atkinson, both of Shreveport, La., for appellants.

Wells, Wells, Lipscomb & Newman, of Jackson, for appellee.

136

Creekmore & Creekmore, of Jackson, amicus curiae.

140

Argued orally by **E. R. Holmes, Jr.**, for appellants, by **W. R. Newman**, for appellee, and by **Rufus Creekmore**, amicus curiae.

**McGehee, J.**, delivered the opinion of the court.

This suit was brought by the appellee, R. G. Brown, Jr., to recover of the appellants, Gulf Refining Company and S. W. Stewart, the value of an International Truck, consisting of a tractor and oil tanktrailer, and also the value of approximately 3,500 gallons of gasoline being, transported by the truck, when the same was destroyed as a result of a traffic accident caused by the alleged negligence of Stewart, while engaged about his duties as an employee of the Gulf Refining Company, when he stopped his automobile in the entrance to and extending partly on the Tallahala Creek Bridge on U. S. Highway 84, approximately one mile East of Laurel, Mississippi.

The damage resulting to the owner of said property is agreed to have been the sum of $3,750, but this amount was reduced to the extent of 25% on account of the contributory negligence of the plaintiff's truck driver, who was killed in the accident. A suit had been tried in the Federal District Court for the recovery of damages on account of his death, and the testimony taken upon that trial was transcribed and submitted to the trial judge in the state court in the instant case, who heard and determined the issues of fact herein while sitting as both judge and jury, and who had properly instructed himself as to the applicable principles of law involved, so far as the record here discloses.

The highway at the point of the accident, and for some distance East, consisted of a concrete pavement twenty feet in width, with well sodded and firm shoulders of approximately five feet in width on each side, affording ample room to permit the stopping of a car thereon so as to leave the entire paved portion of the highway unobstructed. The roadway of the bridge was of concrete twenty feet in width, and this long and high bridge had a concrete ballustrade or bannister on each side thereof.

The proof further discloses that at approximately one o'clock A. M. on a dark night the appellant Stewart was traveling West toward Laurel when he stopped at the East entrance of the bridge with his car extending from two to four feet thereon, and that he stopped for the purpose of ascertaining whether he could be of assistance to a young lady who had flagged him to stop after she had left her companions, some boys and another girl, in a Chevrolet car which was then standing on the shoulder of the highway with its lights burning and about 200 feet East of the said bridge. While thus stopped to ascertain whether he could take the young lady into Laurel or be of other assistance to her, the Chevrolet car came forward and passed Stewart on his left, leaving only four or five feet of the traveled way of the bridge on the South side thereof for the passage of other vehicles, the

right wheels of Stewart's car being from one foot to one and a half feet from the North bannister of the bridge; that while the Chevrolet car was turning back into the North side of the traveled way of the bridge ahead of the Stewart car and before it had cleared the South half of the roadway on the bridge, the International oil truck of the appellee, driven by a Mr. Griffin, approached from the rear at a very fast rate of speed and ran into the left rear end of the Stewart car, knocking it some distance forward so as to cause it to strike the right rear end of the Chevrolet, and with the result that the said oil truck crashed through the concrete ballustrade on the South side of the bridge some 30 feet or more from the East end thereof and burst into flames, causing the death of Griffin and the destruction of the oil truck and its tank and trailer. The two automobiles were also caused to catch on fire after the passengers had removed therefrom.

It is urged on behalf of the appellants: (1) That the stopping of the Stewart car on the bridge in such manner as to leave only about 12 feet of the traveled portion thereof then unobstructed was an incident to travel and was in the exercise of a right that cannot be constitutionally restrained; (2) that insofar as the act of the appellant Stewart is concerned, acting for and on behalf of his employer, Gulf Refining Company, the unfortunate tragedy was the result of an intervening and independent cause since the driver of the Chevrolet car over which Stewart had no control had of his own volition proceeded to pass in such manner as to block the highway and prevent the safe passage of the appellee's oil truck; and (3) that otherwise the accident was the sole and proximate result of the negligence of the driver of the oil truck in not having the same under such control as to avoid striking the Stewart car and in attempting to pass other vehicles on a bridge or within 100 feet thereof in violation of Section 60(b), Subsection 2, of Chapter 200, Laws of 1938, which prohibits any vehicle from overtaking and passing another "when approaching within 100 feet

of any bridge.." And, it is also contended on behalf
of the appellants that if it should be held that the act of
Stewart in stopping his car on the occasion complained
of was such as to constitute negligence contributing to
the accident, the damages should have been mitigated
to a greater extent than 25% of the value of the property
destroyed for the reason that the negligence of the ap-
pellee's truck driver in running into the Stewart car un-
der the circumstances hereinbefore stated was greatly in
excess of any negligence on the part of Stewart in mo-
mentarily stopping his car under the circumstances then
confronting him and for the laudable purpose hereinbe-
fore stated.

We are of the opinion that the trial judge was war-
ranted under the facts of the case in finding that the
stopping of the Stewart car at the particular place shown
by the evidence was in violation of Section 90 of Chapter
200, Laws of 1938, and that the same constituted action-
able negligence. This section of the act prohibits the
stopping, standing or parking of vehicles under certain
circumstances outside of the business or residence dis-
tricts, and reads as follows: "(a) Upon any highway
outside of a business or residence district no person shall
stop, park, or leave standing any vehicle, whether at-
tended or unattended, upon the paved or improved or
main traveled part of the highway when it is practical to
stop, park, or so leave such vehicle off such part of said
highway, but in every event a clear and unobstructed
width of at least 20 feet of such part of the highway op-
posite such standing vehicle shall be left for the free
passage of other vehicles and a clear view of such stopped
vehicle be available from a distance of 200 feet in each
direction upon such highway." The question presented
in the construction of this statute is whether or not un-
der the facts and circumstances of a particular case it is
"practical" to stop, park or so leave such vehicle off such
part of the paved or improved or main traveled part
of the highway, including "sound and safe shoulders,"

if any, in the situation then confronting the driver in such case. Teche Lines v. Danforth, 195 Miss. 226, 12 So. (2d) 784, 788. In that case, the opinion reviews the decisions of our court and a number from other jurisdictions as to the applicable principles of law involved, and then sums up the conclusion of the court as follows:

"Our ruling is that when twenty feet of clearance is impossible, the vehicle shall turn as far to the right as practical including sound and safe shoulders, but must not stop upon any part of the traveled highway unless and until at least 200 feet clear view is available in each direction from the point where the stop is made, save when the vehicle is disabled, as provided for under subsection (b); and save, further, when on account of obstructions or equivalent conditions ahead, it is impossible to proceed so as to leave the 200 feet of clear view; and that all this is for the determination of the jury, instead of being taken away from them, as was done here."

In the case at bar, the proof discloses that in addition to the paved portion of the road which was 20 feet in width, there were sound and safe shoulders of approximately 5 feet in width on each side thereof extending Eastward for several hundred feet, and on which shoulders a vehicle could be safely parked so as to leave the entire pavement unobstructed. It was entirely practical, under the proof in this case, for Stewart to have driven his car up close to the East end of the bridge and immediately behind the young lady so as to stop the same entirely off the pavement, and the trial judge so found; also that it was also stopped in violation of Section 92(a), subsection 13, of the Act under consideration, which provides that "No person shall stop, stand or park a vehicle, . . . Upon any bridge or other elevated structure upon a highway . . ."

In holding that these statutes were violated by Stewart, the decision of the lower court was clearly within the limitations of the express holding of this court in the case of Teche Lines v. Danforth, supra, and also within the

limitations discussed and approved throughout the opinion therein. The correctness of this conclusion is supported by many of the authorities cited in the briefs of counsel and is not controverted by those which may apparently hold to the contrary view under statutes which merely prohibit the parking or leaving standing of vehicles under the prohibited circumstances. It would unnecessarily prolong this opinion to review and discuss the numerous decisions referred to in the briefs of counsel. It is sufficient to say that the case is controlled by the principles announced by our court in the case, supra.

If it be said that it was but natural that a man should stop his car thus momentarily to render assistance to a lady in the situation here involved, the answer is that the legislature evidently took into account that it was natural and probable that the drivers of vehicles may want to stop on the highways and bridges under some circumstances when it is practical for them to stop nearby and leave the traveled portion of the highway unobstructed, and for this reason the statute was enacted in the exercise of the police power of the state and in the interest of the safety of the traveling public.

The next question presented is whether or not, even though Stewart had partly obstructed the highway in violation of the statute, his act in so doing was a proximate and contributing cause to the accident complained of; that is to say, whether or not the act of the driver of the Chevrolet car in passing the Stewart car under the circumstances was the interventing, independent and efficient cause. Mr. Stewart had just passed the Chevrolet car where it was parked on the shoulders of the highway only about 200 feet East of the bridge, with its lights burning, as aforesaid, and he should have reasonably anticipated that in the exercise of his right to overtake and pass a stopped car, whether on a bridge or elsewhere, the driver of the Chevrolet car would proceed forward and pass him on the bridge, not knowing whether such stopped

car would occupy the right side of the highway only momentarily or for an appreciable length of time.

It was said in the case of Solomon v. Continental Baking Company, 172 Miss. 388, 160 So. 732, that where a car is being driven without a red light, contrary to Section 5575, Code of 1930, the driver should realize the probability that one driving another automobile would approach him from the rear without himself observing the requirements of the "law of the road," and that one of the purposes of the statute requiring that an automobile be equipped with such a light is to prevent the same from being collided with. Likewise, it may be aptly stated that one of the purposes of the statute requiring an automobile not to stop on the highway, or on a bridge, under the circumstances stated therein, is to prevent collisions of the character here involved.

In the Alabama case of Capital Motor Lines v. Gillette, 235 Ala. 157, 177 So. 881, when construing a highway statute which forbade one from parking or leaving standing an automobile on the highway, the court held that where a bus was stopped temporarily for a laudable purpose, the rendering of emergency assistance to persons probably in distress, and where the driver was acting in the spirit of a Good Samaritan, it was a question for the jury as to whether the driver of the bus was guilty of actionable negligence that concurred with the contributory negligence of another person in producing the injury complained of. And, in the case of Public Service Corporation v. Watts, 168 Miss. 235, 150 So. 192, 194, it was said: "If the force which causes the injury is put in operation or motion by what is the negligence of the defendant, and that force or motion is still in progress or operation and has not lost its identity and continuity as such when the injury occurs, then the negligence which [started] the injurious force in operation is the proximate cause."

The position of the Stewart car on the bridge did not cease to be a legal and proximate cause of the accident

because of the intervention of the Chevrolet car, for the reason that when the driver of the Chevrolet got to where Stewart's car was, he had to turn to his left to go around. He turned to his left because Stewart's car was stopped on the right. Then too, the Stewart car was still there when the appellee's oil truck arrived at the scene. It was the Stewart car that was struck at its left rear end by the oil truck when the latter was evidently trying to turn to the left and avoid the impending tragedy. How then can it be said that this car only provided the condition for and not a contributing proximate cause of the accident?

Without regard to the position of the Chevrolet car immediately before and at the moment of the accident, the legal principle here applicable is clearly stated in the case of Cumberland Tel. & Tel. Company v. Woodham, 99 Miss. 318, 54 So. 890, 891, where it was said in quoting with approval from 29 Cyc. 492-496 that "If a defendant is negligent, and this negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury." Of course, Stewart could not have anticipated that the particular injury complained of would have resulted from his negligent act, or that an injury would have occurred in the particular manner in which it did on that occasion, but he should have reasonably anticipated the happening of the intervening event which transpired to cause an injury in the instant case, since he was required under the law to anticipate the approach of other vehicles from the rear at any moment.

Conceding that the failure of the driver of the appellee's oil truck to have the same under control, and that his action in failing to observe other requirements of the said Chapter 200, Laws of 1938, known as the "Uniform Highway Traffic Regulation Act," largely contributed

to the accident in question, nevertheless it cannot be regarded as the sole proximate cause of the oil truck being wrecked and burned on the occasion complained of, it being clearly shown that the presence of the Stewart car continued to be a factor in bringing about this needless tragedy.

But there remains for determination the question of whether or not the contributory negligence of the driver of the oil truck was such as to require a mitigation of the damages to a greater extent than 25% of the value thereof.

It was shown without dispute that the large International truck, tank trailer, and its load of gasoline, weighing about 12,000 pounds, approached this bridge at a fast rate of speed, estimated to be 50 or 60 miles per hour, and at a time when the driver should have at least seen the Chevrolet car proceeding forward, whether he saw the Stewart car before he had arrived at the bridge or not, since it was neither raining nor foggy, and the highway was practically straight for several hundred feet in the direction from which he was approaching. It was also shown that this oil truck was equipped with hydraulic brakes which could have been effectively applied in time to avoid the accident if he had been proceeding at a reasonable rate of speed; that he had good lights on his truck and a spotlight sufficient to light up the highway for some distance before he struck the Stewart car, and that both the headlights and the red light on the rear of each of these automobiles were burning at the time. And, even though he may have been entitled to pass the stopped car of Stewart, he was not entitled under the statute to pass the moving Chevrolet within 100 feet of the bridge while it was proceeding in the same direction that he was traveling. But without further reviewing the evidence in detail, which is not in conflict in essential particulars pertaining to the actual cause of the accident, and without discussing any rights that the young lady as a pedestrian on the highway may have had,

we are of the opinion, after reading the transcribed testimony and examining the maps and photographs which the trial judge had before him that the gross negligence of the driver of the oil truck was doubtless more responsible for the damages sued for than the negligence of Stewart in stopping his car at the entrance to the bridge in the manner and for the purpose heretofore mentioned. And, we have therefore concluded that the damage caused by the destruction of the oil truck should be mitigated to at least 50% of the value thereof, and that the judgment of the court below should be affirmed if a remittitur is accordingly entered; that otherwise the case should be reversed for the assessment of damages only.

Affirmed with remittitur.