Fant, et al. *v.* Commercial Carriers, et al.

Division B.    Jan. 8, 1951.

No. 37702  (49 So. (2d) 887)

Eaton & Cottrell, for appellants.

476

Rae Bryant and Wallace, Greaves & Wallace, for appellee.

**Alexander, J.**

Appellant was severely injured when the automobile of which he was the driver was struck from the rear by a truck owned by one Bradley.

The appellee was transporting four new automobiles on a large trailer truck on Highway 49 just north of Gulfport. It was raining and, although the sun had not set, most of the cars on the highway had their lights burning. Appellee had turned on its lights shortly before the collision and they were burning at the time.

The collision occurred between two points, Turkey Creek bridge and Duffy's Tavern, which were approximately 1166 feet apart. After entering this area the motor of appellee became disabled from water due to the rain and splashing of surface water from the highway by the transport truck and passing cars. All the cylinders but two were rendered useless by short-circuiting and the driver was compelled to abandon the use of a high gear to intermediate gears and finally to the lowest available. His transport slowed gradually to a stop at a point about 350 feet north of the north property line of the tavern. He was traveling south and remained at all times on the west, or right lane, of the highway which was 18 feet wide with a shoulder on the west side of from 5 to a little over 6 feet.

At the first stop the engine was still running, but due to the water damage was without power to proceed except at a creeping pace. The driver continued his efforts to restore function to the engine and remained stalled for about one or one and one-half minutes. Thereupon, by continued efforts, he made a farther advance of some 15 feet. The first stop was just north of a roadside store, which was a short distance north of a filling station, both on the east side of the highway. The driver weighed the advisability of crossing over the east or left side of the highway and seeking security for himself and others within the service station area. To the obvious hazards of undertaking this maneuver with only two cylinders firing, was added the discovery that other cars were already occupying the drive-in area, and he was led to persist in his efforts to increase the power of his engine and was able to force it forward to a point about 200 feet south of the store and about 75 feet north of the tavern property. From this point the driver could see the drive-in area of the tavern which was on the west side of the highway, and he endeavored to limp down to this space so as to free the west lane of the highway. In his words "The motor was still missing and popping and I pumped the accelerator, and it started moving again, and when the accident occurred I heard the impact and heard somebody scream."

Just prior to the collision a passenger car had driven up behind the transport and stopped, and shortly thereafter the car of appellant Fant, proceeding south, slowed to a stop behind the first car. This was the setting for the collision. A truck loaded with crossties and operated by a servant of one Bradley, running at an excessive speed, crashed into the rear car injuring appellant and practically demolishing the car.

Suit was brought by Fant and the New Amsterdam Casualty Company, the latter seeking to protect its satisfaction of liability to Fant under the Workmen's Compensation Act. The defendants jointly sued were ap-

pellee and Bradley. A peremptory instruction was given to plaintiffs establishing Bradley's liability and the jury fixed the damages at $40,000.00. A directed charge acquitting the appellee, Commercial Carriers, Inc., was given. It is from the latter ruling alone that this appeal is taken.

Unquestionably, the disfunction of appellee's motor with the resultant retarding of movement and its several stops, though brief, whereby the car of appellant was entrapped between the pincers of the stalled transport and the oncoming truck, was a contributing cause of the injury.

It is more crucial, however, to examine whether the course followed by the appellee constituted negligence. The driver had twenty-nine years experience as a motorist and had driven this particular transport for over a year. It had never been subjected to a similar disability and was otherwise in good mechanical condition. There is no contradiction of his assertion that he was doing all that he could to get more ignition to the motor and was using all reasonable means to proceed, at least to a point where he could draw off the highway.

Argument centers about two contentions, (1) that Code 1942, Section 8215, forbids anyone upon a highway outside of a business or residence district to stop, park or leave any vehicle upon the paved portion of the highway "when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles . . . ." By subsection (b) of this statute, it is provided: "This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position"; (2) also invoked is Section 8256, as

amended by Chapter 420, sec. 11 of the Laws of 1946, requiring the driver of a disabled truck to place flares or other named warning devices upon the roadway adjacent to the vehicle and one at both the front and rear of the vehicle at a distance of 100 feet.

As to the first contention, a reasonable and practical view must be taken. Teche Lines, Inc., v. Danforth, 195 Miss. 226, 12 So. (2d) 784. As stated, the paved portion of the highway was 18 feet wide, and, of course, the west lane was only 9 feet in width. The maximum width of the shoulder is about 6 feet. The width of the transport is 8 feet and with its load weighed about 27,500 pounds. Assuming that the driver was willing to risk this weight upon the right-hand wheels at the very edge of the shoulder, the south-bound or west lane would remain obstructed at least by 2 feet, leaving a width of 7 feet within which a south-bound vehicle could pass without encountering north-bound traffic. It was raining. The driver contemplated pulling over onto the shoulder but, not without reason, decided not to hazard his top-heavy cargo when it was probable that the rains had softened the ground. Although later tests by witnesses gave substance to the contention that the shoulders were firm, there is special significance in the testimony of the driver that "as muddy as that (the shoulder) was, one wheel on there would have stopped it (the transport)". He was acting in the light of his past experience and of the present apparent conditions. Here the test of reasonable prudence may not be wholly objective.

Had he taken this risk, there is no evidence that the other vehicles which drew up behind him would have exposed themselves to oncoming traffic by electing to pass within the narrow width thus left free. It needs no testimony to take into account that, in order to place all the wheels of the tractor and the trailer along the shoulder's edge, it would require no inconsiderable time and forward movement. The over-all length of the transport is 44 feet. In his words, had he attempted to cross

the highway into the filling station area "it would have blocked traffic both ways". At that time, it may be repeated, there was ignition in only two or three cylinders due to the moisture about the spark plugs. North-bound traffic was passing during this period and south-bound cars seeking to by-pass the transport would have had to take into account its length. He chose to seek refuge in the tavern area and was undertaking to belabor his failing motor into attaining this objective. He was, as stated, not over 75 feet away therefrom, or according to other witnesses, about 40 feet, when the collision occurred.

In what respect therefore did he act, under the circumstances, without reasonable prudence? To put this issue to the jury would be to authorize a finding that he was negligent in not choosing one of two courses: (a) cross over the highway at a snail's pace into the service station which was already occupied by others, or (b) to give a meager passageway in the west lane by risking his load upon a wet, and to him untried, shoulder. Subsequent disclosures might have revealed that either course could have been followed without calamity. This is not the test. Rather, we must examine whether in prodding this failing engine forward, using such methods as were available, he acted without reasonable prudence. We have carefully appraised all the relevant factors and are persuaded that it would be unjust to characterize his course as negligent or to permit it to be so found. We need add only that Gulf Refining Co. v. Brown, 196 Miss. 131, 16 So. (2d) 765, is not here in point for the reason that the parking or stopping was there purely voluntary and not under any necessity or emergency. Moreover, there was parking in its accepted meaning.

We arrive, then, at the second contention that appellee was guilty of negligence per se in not putting out flares or warnings as required by Section 8256, as amended. Here again we must reconstruct the scene of the collision. The engine of the transport continued to

run. It stopped once but immediately responded to the starter. The forward movement was halted for very brief intervals. ■■ ■ Common observation would vindicate the assertion that it would have required a longer period to ignite and place three flares, two of which at distances north and south, respectively, of 100 feet. The driver would have been compelled to walk 300 feet to accomplish this, and another 100 feet to return to his post.

It is not beside the mark for appellee to argue that the two cars which came to a stop behind the truck absorbed, together with their intervening distances, a considerable space, and that upon these cars the rear lights were burning, and upon the transport, in addition to its headlights, there were visible from the rear nine warning lights. All these were readily seen by the two cars which drew up behind it. Moreover, the driver of the Bradley truck testified that "I came across the (Turkey Creek) bridge and rounded the (three degree) curve, and I saw a truck sitting there and a car."

Citation need not be summoned to support the principle that even ■■■ a negligent act is not legally a proximate cause of injury if such injury would have happened in any event. It is not for us to discuss the intimation that the evident guilt of the joint defendant Bradley, who has accepted an adverse verdict of $40,000.00 without feeling aggrieved enough to hazard an appeal, is a confirmation of the principle just adverted to.

We have discussed the case upon the assumption that the injury occurred outside of a business or residence district as defined by Section 8256, as amended, and without analyzing the testimony as to whether such is a fact. Under the views above expressed this is unnecessary.

We find no error in the granting of the peremptory charge for appellee.

Affirmed.