**Herbert HARDY, Administrator of the Estate of Frank Hardy, Deceased, Appellant,**

v.

**R. E. LAMBERT, Jr., et al., Appellees.**

**No. 16798.**

United States Court of Appeals
Fifth Circuit.

Feb. 28, 1958.

Philip Mansour, Greenville, Miss., for appellant.

W. C. Keady, Greenville, Miss., for appellees.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The appellant sued the appellees for the alleged wrongful death of Frank Hardy, caused by a collision between an automobile driven by Frank Hardy and a parked or placed truck of the appellees. After a trial, the jury returned a verdict for the defendants. The only rulings complained of are the refusal to direct a verdict for the plaintiff, to enter judgment non obstante veredicto, or to grant a new trial; each of which rulings pre-

---

sents the single question of whether under the evidence, the jury could properly return a verdict for the defendants.

Appellant admits, as he should, "that the evidence in this case must be viewed in the light most favorable to the defendants." So viewed, the jury could reasonably find the facts which follow.

The collision occurred about 9:30 o'clock on the night of September 14, 1956 on North Theobald Street in Greenville, Mississippi, between a large tractor attached to a trailer and a Ford automobile driven by Frank Hardy. Theobald Street runs north and south. On the west side of Theobald Street, just inside the corporate limits of the City of Greenville, there is located a large warehouse used for the storage of grain. The east side of the warehouse, on which the loading door opens, is 30 feet west of the west paved edge of Theobald Street.

The appellees' truck had a cab over its engine and was 16 feet 6 inches in length. Its van-type trailer, painted aluminum in color was 32 feet 6 inches in length. When the two units were connected, a part of the tractor was under the trailer, so that the overall length of both units was 42 feet 6 inches.

The truck and trailer were driven by appellees' employee to the warehouse to receive a load of oats. On arriving at the warehouse, the truck driver was directed by the warehouse manager how to park the truck and trailer. He backed the trailer off of Theobald Street as far west as the rear of the trailer would go so that its rear end would be flush with the warehouse door, and then "jack-knifed" the tractor to the left so that it faced northeast at about a forty-five degree angle. The right front wheel of the tractor protruded about 4 feet out in the street from the west edge of the exposed pavement. There remained open for traffic 14 or 15 feet of exposed pavement in addition to a dirt shoulder several feet wide on the east side of the street.

In this parked position all the truck and trailer lights were left on, except the main headlights which were turned off. The two truck parking lights which are white lights located on the front of the cab, about half way down, just above the main headlights, were put on. In addition, there were three amber lights located at the top of the truck cab, one in the center and one on each side, and three amber trailer lights located about a foot from the top of each side of the trailer, one in the middle and one on each side of the trailer. There was also a red reflector button located at the bottom of the trailer on each of the four corners.

Before the loading started, the appellees' driver put out three reflector flares, each constructed on a base which raises the reflector several inches from the ground level. One of these reflectors was placed at the front of the truck, about in the center of Theobald Street. One was placed 50 to 75 feet south of the truck, near the east edge of Theobald Street, and the third reflector was placed about 50 to 75 feet north of the truck, several feet out in the west lane of Theobald. This reflector was turned north, so as to reflect the headlights of a vehicle approaching from that direction.

Frank Hardy was driving south on Theobald Street, in his proper lane of traffic, and crashed the front end of his Ford automobile into the left front of the appellees' tractor, which was parked in the manner stated. The Ford automobile had skidded from 18 to 20 feet before the impact. The force of the blow was such as to knock the front end of the tractor around about 4 feet from its original position. The two vehicles became locked or "froze" in the collision.

During the short while before the accident that the truck and trailer had been parked, several cars had gone by both north and south without trouble. No street lights were in the immediate vicinity. The night was dark and clear, the road dry. North of the warehouse Theobald Street takes a slight downgrade and curves moderately to the east. There was evidence, however, that the visibility was good in both directions of Theobald Street for at least 150 yards from the point where the truck and trailer were parked.

The attending physician testified that, when Frank Hardy was admitted to the hospital following the accident, there was an odor of alcohol on his breath, but that he could not tell how much he had had to drink nor whether or not he was intoxicated. The speed limit changed from 60 miles per hour to 25 miles per hour at the corporate limits of the City, just north of the place of collision. As to the speed of the Ford automobile, there was only circumstantial evidence, and the testimony of several witnesses that it sounded as if it was traveling fast.

The negligence, if any, of Frank Hardy is unimportant upon this appeal, unless the jury was warranted in believing that his negligence was the sole proximate cause of the accident and injury. Otherwise, the amount of the recovery would be diminished in accordance with the comparative negligence statute in Mississippi.

Appellant's main insistence is that the standard of conduct to which the appellees' driver had to conform was defined by certain ordinances of the City of Greenville; that admittedly those ordinances were not observed and, hence, the appellees' driver was negligent as a matter of law. The appellant introduced two such ordinances, Sections 397 and 343 of the Ordinances of the City of Greenville, copied in the margin.[1]

Admittedly, the manner of parking or stopping of the appellees' truck and trailer violated those City ordinances. As said, however, in Marx v. Berry, 1936, 176 Miss. 1, 168 So. 61, 62, 63, the violation of a statute or ordinance does not make out an absolute case of li-

---

1. Section 397. *"Lights on Parked Vehicles*

"Whenever a vehicle is parked or stopped on a street during the times between one half hour after sunset and one half hour before sunrise or at any other time when there is not sufficient light to render clearly discernible any vehicle on the street from a distance of 200 feet, there shall be displayed upon such vehicle one or more lamps, projecting a white light visible under normal atmospheric conditions from a distance of 500 feet to the front of said vehicle and projecting a red light visible under like conditions from a distance of 500 feet to the rear, except that such parking light or lights need not be displayed upon any vehicle stopping or parking in accordance with the other provisions of this ordinance upon any street, or streets designated herein as the 'congested district', where there is sufficient light to reveal any person within a distance of 200 feet upon said street."

Section 343. *"Standing or Parking Close to Curb.*

"(a) Except when necessary in obedience to traffic regulations or traffic signs or signals, the operator of a vehicle shall not stop, stand, or park such vehicle in a roadway other than parallel with the edge of the roadway, headed in the direction of traffic, and with the curbside wheels of the vehicle within 6 inches of the edge of the roadway, except as provided in the following three paragraphs:

"(1) Upon those streets which have been marked or signed for angle parking, vehicles shall be parked at the angle to the curb indicated by such marks or signs.

"(2) In places where and at hours when, stopping for the loading or the unloading of merchandise or materials is permitted, vehicles used for the transportation of merchandise or materials may back into the curb to take on or discharge loads, when the owner of such vehicles holds a permit granting him such special privilege, and providing further that such permit shall be either in the possession of the operator or on the vehicle at the time such vehicle is backed against the curb to take on or discharge a load, and it shall be unlawful for any owner or operator to violate any of the special terms or conditions of any such special permit.

"(b) The City Council shall determine upon what streets angle parking shall be permitted and shall mark or sign, or cause to be marked or signed, such streets.

"(c) The City Council is hereby authorized to issue, to any owner of a vehicle used to transport merchandise or materials, a special permit, renewable annually, and state therein the terms and conditions thereof, allowing the operator of such vehicle the privilege of loading and unloading while the vehicle is backed against the curb, if in the opinion of the City Council such privilege is reasonably necessary in the conduct of the owners business and will not seriously interfere with traffic."

ability but "it is still left for the jury under all the evidence to say whether or not the violation was the proximate cause of the injury." Compare Solomon v. Continental Baking Co., 1935, 172 Miss. 388, 160 So. 732; Gulf Refining Co. v. Brown, 1944, 196 Miss. 131, 16 So. 2d 765.

■ The jury were warranted in believing that one or more of the reflector flares were visible when they came within the range of an automobile light for a distance of more than 500 feet from the parked tractor, and that the several lights on the tractor and trailer rendered the vehicle as obvious or conspicuous to an approaching motorist as would lights which complied strictly with Section 397.

Admittedly, the permit for the stopping of the vehicle for loading and unloading required by Section 343 was not secured. No case directly in point is cited by either party as to whether nonparallel parking for loading purposes without securing such permit was negligence per se. The most common license or permit, that occurs to us, required in connection with the operation of a motor vehicle is a driver's license. According to the weight of authority, the negligence of an unlicensed operator of a motor vehicle is to be determined by the facts of the particular case. 60 C.J.S. Motor Vehicles § 162; 5 Am.Jur. Automobiles and Highway Traffic, § 142.

It is not clear to us whether the words "within 6 inches of the edge of the roadway" as used in Section 343 refer to the edge of the shoulders or to the edge of the pavement. The pavement was not actually blocked by as much as the width of the tractor.

Whatever, may be the proper construction of either ordinance, we think that the jury were warranted in believing that the lights rendered the position of the vehicle entirely obvious, and that the violation of either or both of said ordinances was not the proximate cause of the collision.

After a careful reading of the evidence in connection with the plat and photographs certified as exhibits, we conclude that the district court properly refused to direct a verdict or to enter judgment non obstante veredicto, and we cannot say that it abused its discretion in denying the motion for new trial. The judgment is therefore

Affirmed.