FILGO, et al., D.B.A. TOM'S TOASTED PEANUTS *v.*
CRIDER, et al.

No. 43227 November 23, 1964 168 So. 2d 805

*Lumpkin, Holland & Ray,* Tupelo, for appellants.

W. P. Mitchell, Jess B. Rogers, Tupelo, for appellees.

ETHRIDGE, J.

This case involves principally questions of liability for injury in a collision with a truck standing on the "wrong" or left-hand side of a city street, and the propriety of certain instructions granted plaintiffs defining such negligence. Edward Leon Crider, Jr. was killed on October 15, 1962, around eight o'clock in the evening, in the City of Tupelo, when he ran into the front of a truck owned by W. W. Timbes, which had been parked by his agent J. B. Filgo, both of whom are defendants-appellants. This action was brought in the Circuit Court of Lee County by Edward's father, mother and brother, under the wrongful death statute. Miss. Code Ann. § 1453 (1956).

The evidence was sufficient to warrant submission of the issue of liability to the jury, and the evidence supported its verdict for plaintiffs-appellees in the amount of $18,000. Robert E. Lee Drive in Tupelo runs east and west. It is a much-traveled street, and recently was covered with a gray slag. On the south side is the Lee Drive-In Theater. Filgo, after making delivery to the concession stand at the theater, drove Timbes' gray-colored paneled truck out of the theater property and onto Lee Drive. He proceeded in a westerly direction to a point in front of the ticket office, and parked the truck heading west on the south side of the road, partially in the south or eastbound lane of traffic. There was adequate room for parking off the north side of the street, or on the gravel drive leading to the ticket office. It was dark at the time, and lighting in the area was

poor. The paved or blacktopped portion of the street was twenty-four feet in width, and shoulders on each side were three feet wide. There were some street lights, but the one closest to the parked truck was about two hundred fifty feet away. A white board fence on the north side of the theater had thirty-two light bulbs of unstated size strung along it. There was a light at a trucking company office on the north side of the street, and perhaps several others in the vicinity. However, the jury was justified in finding that lighting in this area of Lee Drive was poor, and what existed could be misleading to a motorist. Three policemen who arrived shortly after the accident stated it was "a pretty dark street," the lights from the theater were of no value in illuminating the street, which was "very dim."

Filgo testified that he turned on the parking lights on the truck, and they were burning at the time of the accident. Others who arrived afterwards said the left front light was on; the right one apparently was broken from the collision. Although the truck was partly on the paved portion of the street, there was sufficient clearance for other vehicles to pass, if they observed the truck in time. Filgo got out of the truck, and talked with the theater manager for ten to fifteen minutes. Edward Crider, Jr. was driving his car in an easterly direction on the street in his proper lane of traffic, coming out of a brightly lighted area. His car collided with the parked truck, the right front of his vehicle striking the right front of the truck. The collision resulted in Edward's death. There was no evidence that he applied his brakes before the impact, and there were no skid marks.

Although Edward may have been negligent in failure to keep a lookout and to keep his car under control, there was ample evidence to justify the jury in finding that a contributing, proximate cause of his death was the negligence of Filgo in parking his truck at the time,

and in the place and manner stated. It was parked on the left-hand or south side of the drive, facing west, and partially blocking the south or eastbound lane of traffic. Filgo was familiar with the area, was aware that traffic was fairly heavy, and he could have parked on the gravel driveway leading to the ticket office to the theater, or on the lot to the north. The gray slag and truck were about the same color, creating a visual blending of the vehicle and street. Further, Filgo's truck was parked at night in an area which was poorly lighted and very dim. It was standing partly on the street in front of a place of public amusement, frequently traversed, and the jury could have believed that the thirty-two lights strung out on the fence in front of the theater were misleading to a motorist. Edward's car approached from a westerly direction, through an area where there was a considerable amount of light, into this poorly lighted street. Assuming he was guilty of contributory negligence, it would not bar a recovery, under the comparative negligence statute, where Filgo also was negligent, and he contributed to the collision and Edward's death. Miss. Code Ann. §§ 1454, 1455 (1956).

 The parking of the truck in this location was not in violation of any municipal ordinance or statute. Mississippi Code Annotated section 8215 (1956) applies only to highways outside of a business or residence district. However, the operator of an automobile or truck has a common law duty, independently of statute, to exercise reasonable care in the time, manner, and place of parking his vehicle, including leaving it in a proper and reasonably safe place and with adequate illumination, so as to avoid creating a hazard to other motorists and causing injury to other travelers on the street. 8 Am. Jur. 2d *Automobiles and Highway Traffic* § § 811 *et seq.* Where a parked vehicle is partially blocking a paved or traveled portion of a street, the operator should exercised ordinary care for the safety of others using it. *Id.* § 816. The topography and physical features

of the place of stopping may be, as here, a vital factor. *Id.* § 822. Lighting and visibility on the street, together with misleading illumination, may be relevant. *Id.* § 818; Jester v. Bailey, 239 Miss. 384, 123 So. 2d 442 (1960). Moreover, when it is necessary for a motorist to stop his vehicle along the road, he has the duty, where it is reasonably possible, as it was here, to drive until he finds a place to stop off the traveled portion of the road. These factors as negligence and the issue of proximate cause are ordinarily questions for the jury. *Id.* § 821; 60 C.J.S. *Motor Vehicles* § 300(b); 2A Blashfield, *Cyclopedia of Automobile Law* § § 1191, 1199 (1951); 4 Blashfield, *op. cit. supra* § 2642; Annot., 70 A.L.R. 1021 (1931).

This common law duty to use reasonable care in parking a vehicle on the traveled portion of a street or highway was recognized in Continental Southern Lines, Inc. v. Klaas, 217 Miss. 795, 823, 65 So. 2d 575, 584 (1953). Cf. Simmons v. Keyes, 247 Miss. 315, 152 So. 2d 909 (1963); Smith v. Dillon Cab Co., 245 Miss. 198, 146 So. 2d 879 (1960); Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461 (1952); Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So. 2d 578 (1951); Davidson v. Knight, 29 So. 2d 656 (Miss. 1947); Gulf Ref. Co. v. Brown, 196 Miss. 131, 16 So. 2d 765 (1944); Frazier v. Hull, 157 Miss. 303, 127 So. 775 (1930); Duke v. Mitchell, 153 Miss. 880, 122 So. 189 (1929); see also House v. Sante Fe Trail Transp. Co., 217 S.W. 2d 382 (Mo. 1949); Waynick v. Walrond, 155 Va. 400, 154 S.E. 522 (1930).

In summary, it was the common law duty of Filgo to exercise reasonable care when parking his truck on the street so as not to endanger others using it, or to create a hazard. The jury was warranted in finding that he was negligent in this respect, and that such negligence was a proximate, contributing cause of Edward's death.

Appellants complain of three instructions on liability granted appellees. Although these particular ones should have spelled out in more factual detail what would constitute negligent parking by Filgo, when they are read together and along with the other instruction granted appellees on liability, we think they adequately presented to the jury the issues.

There was no error in the instruction on damages. And we can not say the trial judge abused his discretion in overruling certain objections to the cross-examination of Filgo, which appellants say injected improperly the issue of a violation of law. Although somewhat ambiguous, the sequence of questions and answers indicates they were directed toward what was the proper lane of traffic going west, and were not related to parking. Moreover, appellants did not request an instruction that Filgo was not violating the law. Plaintiffs submitted the issue of common law negligence, and no instructions told the jury that Filgo violated the law in so parking. The admission of Mr. Crider's testimony with reference to lighting conditions before and after the collision was merely cumulative, and not error.

Affirmed.

*Kyle, P. J., and McElroy, Jones and Patterson, JJ.,* concur.