209 So.2d 193 (1968)
Jasper RAYBORN
v.
David FREEMAN.
No. 44818.
Supreme Court of Mississippi.
March 25, 1968.
Rehearing Denied April 29, 1968.
*194 Collins & Tew, Laurel, for appellant.
Pack & Ratcliff, Laurel, for appellee.
BRADY, Justice.
This is an appeal from a judgment of the Circuit Court of Jones County, Mississippi, which awarded appellant the sum of $500 on account of injuries received in an automobile accident with the appellee.
On August 6, 1965, at approximately 7:40 A.M., the appellant was returning to his home north of Laurel, Mississippi. The appellant was driving a 1961 Chevrolet truck in a northerly direction over Highway 11 which is intersected by an east-west blacktop road known as the Erata Road. When the appellant was approximately a hundred yards from the intersection he passed a "bobtailed" van truck. Appellant testified that he never turned back into the east or northbound lane of traffic ahead of the van truck but continued in the west or southbound *195 lane of the highway as he approached the Erata crossing.
When he turned left onto the Erata Road he held out his hand indicating a left turn and his turn signal was operating. He lacked about three feet being off Highway 11 when he was struck in the rear of his truck by the appellee, Jimmy David Freeman.
The appellee testified that Highway 11 was a rolling highway. As he topped a little rise he saw a van truck approximately ten feet high; that it was impossible for him to see over it or through it; that when he came over the knoll he could see down the road approximately a half mile; that he was traveling about fifty miles per hour; that the pickup truck of appellant was about twenty feet ahead of the van truck. He further testified that the appellant drove the pickup truck over and in front of him as he was proceeding north in the west lane; that he put on his brakes and struck appellant. He stated "I had the truck beside me and the big ditch there and him in front, and I figured my best bet was him." The appellee said he was between 200 to 300 yards from the intersection when he began to pass the van truck.
The record clearly shows that the appellee was endeavoring to pass the van truck when he was within one hundred feet of the crossing. He testified that he was approximately fifty yards south of the intersection when the appellant "came over" into the left lane, and the collision occurred about 35 to 40 feet south of the intersection.
The pictures introduced in evidence clearly show that the intersection is marked and the intersection sign is visible from the south to persons proceeding north. The appellee admitted that he did not see the intersection sign; that "I was concentrating on passing the truck, and whether anything was coming in the left hand lane." The pictures also clearly show that the intersection is plainly visible to persons using Highway 11 proceeding north or south for a distance of several hundred yards. A highway patrolman testified there were skid marks from the west side of Highway 11 to where appellant's truck came to rest in a ditch on the north side of Erata Road. The position of the truck and skid marks tend to corroborate appellant's testimony that he was within three feet of being off Highway 11.
Appellant was sixty-nine years of age. He obtained and sold fish to persons between the Coast and Laurel and in the Laurel area. He grossed $50 a week and was able to net approximately $25 a week.
Appellant did not believe that he was seriously injured and subsequent to the wreck he went to his home after delivering a few fish that he still had. After reaching his home he became ill and was experiencing pain occasioned by the wreck. He ate no dinner but drank a pint of milk. Subsequently he became nauseated and vomited. On August 9, appellant was not improving and he went to see Dr. Ellis. He was experiencing severe pain in his neck and shoulders. Dr. Ellis examined him on August 9 and hospitalized him through August 12. Dr. Ellis testified that he had multiple bruises of his chest and also was experiencing bladder trouble. While in the hospital the doctor discovered that he had duodenal ulcers and he was treated also for this malady. He was also operated on for prostate trouble and was suffering from arthritis. Dr. Ellis testified that he probably had the arthritic condition at the time of the accident but that it had "worsened." The doctor had treated appellant for arthritis of the back as early as September 3, 1963. The doctor testified that in August 1965 appellant was suffering from an arthritic condition in the cervical or neck area. He testified that trauma will precipitate and aggravate arthritis and that his arthritis was aggravated by the wreck. Dr. Ellis advised that there was no connection between the prostate operation and the wreck but that in his opinion the wreck had some bearing on the appellant's ulcer.
Letters written by the doctor were introduced in evidence. One letter written October *196 8, 1965 discloses that in his opinion the appellant would not have any permanent disability. A second letter written July 9, 1966, however, reveals that "On physical examination Mr. Rayborn was found to have moderate limitation of motion of the neck, especially on turning his head to the right. X-rays revealed severe hypotrophic arthritis of the cervical vertebrae, most marked in the 4th, 5th and 6th vertebrae. I am unable to state whether this condition is related to his automobile accident. However, his accident certainly could have aggravated such a condition if it previously existed. I believe this condition is permanent and it is doubtful if he will be able to return to work." The appellant has not been able to return to work since the collision.
There are but two issues for our consideration in this cause. The first is: Was the verdict of the jury as to the damages awarded grossly inadequate, contrary to the overwhelming weight of the evidence and based upon bias, passion and prejudice? The second is: Did the court err in granting instructions 3, 5 and 9 for the appellee in that said instructions are not supported by the evidence, are misleading, confusing and are not based on applicable legal principles?
Insofar as the first error is concerned, the record discloses that appellant had a life expectancy of 10.1 years. The record is wholly silent as to what part of these years he would have been able to continue in his employment from which he derived a net income of $25 per week. The appellant suffered pain because of his injuries, and the injuries which he received augmented an arthritic condition and could have precipitated his ulcer. Because his hospitalization was not itemized, his hospital bills could not be introduced for the reason he underwent surgery for prostate and treatment for his ulcer and kidneys, but the fact nevertheless remains that some portion of his hospital expense and doctor bills were occasioned by the wreck.
We will consider the second error in conjunction with the first one, for the reason that involved in the second error is the question of comparative negligence. Instruction No. 3 is as follows:
The Court charges you that if you believe from the evidence in this case that the collision in this case was the sole proximate result of the negligence, if any, &check; as defined in other instructions &check; of Jasper Rayborn, then it is your sworn duty to find in favor of the defendant, David Freeman.
It is to be noted that this instruction specifically points out that any negligence of the appellant is to be defined in other instructions.
Instruction No. 5 is as follows:
The Court instructs the jury that if the jury should believe from the evidence in this case that some negligence &check; if any &check; of the plaintiff, Jasper Rayborn, caused or contributed to the causation of the collision, and if the jury should also believe from the evidence in this case that some negligence, if any, of David Freeman contributed to the causation of the collision, the jury may compare the negligence of the parties, if any, and reduce the damages awarded Rayborn in proportion to the degree of negligence, if any, attributable to him.
It is to be noted that this instruction likewise does not define or set out any acts which would constitute negligence on the part of the appellant or of the appellee. This instruction is erroneous because it is a roving instruction and does not define for the jury what facts would constitute negligence on the part of the appellant. Gore v. Patrick, 246 Miss. 715, 150 So.2d 169 (1963). This instruction constitutes reversible error unless there is some other instruction which furnishes the jury a guide as to what facts would constitute negligence on the part of appellant.
*197 Instruction No. 9 is as follows:
For the defendant, Freeman, the Court charges you if you believe from the evidence in this case that the plaintiff, Rayborn, suddenly and without any warning turned his truck from said plaintiff's right hand lane of travel into said plaintiff's left hand lane of travel at a time when he, the said Rayborn, knew or in the exercise of reasonable care for his own safety and the safety of others traveling on the highway should have known of the close proximity of the Freeman automobile, then Rayborn was guilty of negligence, and if you further believe from the evidence in the case that such negligence, if any, on the part of Rayborn was the sole proximate cause of the collision in this case, then it is your sworn duty to find for the defendant, Freeman.
This instruction does in part set out specific acts of negligence on the part of the appellant. It is erroneous, however, because appellee was guilty of negligence and appellant's negligence could not be the sole cause of the accident either under the facts hypothesized in the instruction or under the undisputed fact that the appellee was passing the truck at an intersection or within one hundred feet thereof in violation of Mississippi Code 1942 Annotated section 8185 (1956) which reads as follows:
Limitations on overtaking on the left.
(a) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.
(b) No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions:
* * * * * *
2. When approaching within one hundred feet of any bridge, viaduct, or tunnel or when approaching within one hundred feet of or traversing any intersection or railroad grade crossing.
* * * * * *
An erroneous instruction cannot be used to cure an error in another instruction. It follows, therefore, that the jury had no guide for the application of the statute with reference to contributory negligence.
In McCorkle v. United Gas Pipe Line Company, 253 Miss. 169, 185, 175 So.2d 480, 488 (1965), we held:
It is apparent that we have repeatedly condemned as gross negligence, that which appellee May endeavored to do, the passing of a moving automobile within 100 feet of a bridge, viaduct or tunnel, or when approaching within 100 feet or traversing any intersection or railroad grade crossing, and have held that such negligence is a proximate contributing cause of a collision as a matter of law.
See Gulf Refining Co. v. Brown, 196 Miss. 131, 16 So.2d 765 (1944).
Furthermore, we pointed out in McCorkle as follows:
It is a well established rule of law long recognized by this Court, that the original negligence of one party will not be insulated if the occurrence of the intervening cause might reasonably have been anticipated. (253 Miss. at 188, 175 So.2d at 489.)
*198 See Ross v. Louisville & N.R.R. Co., 178 Miss. 69, 172 So. 752 (1937).
Cited in McCorkle v. United Gas Pipe Line Company, supra, are numerous cases which illustrate the rule of law which makes the violation of Mississippi Code 1942 Annotated section 8185 (1956) an act of negligence which is a proximate contributing cause of a collision as a matter of law. Therefore, the appellee was guilty of gross negligence which proximately caused or contributed to the accident and for this reason the appellee was not entitled to instruction No. 9. The granting of this instruction could have been responsible for the small verdict in this case. Assuming pro arguendo that the evidence would have justified the jury in rendering the $500 verdict depending on whatever version of the facts it believed to be true, it should have been properly instructed on the issue of contributory negligence.
This case is reversed and remanded for a retrial as to damages only. The court should permit both parties to introduce all of their evidence on the question of negligence so that the jury, under correct instructions and if it deems proper, may mitigate the damages because of any negligence on the part of appellant. Vaughn v. Bollis, 221 Miss. 589, 73 So.2d 160 (1954).
Reversed and remanded as to damages only.
GILLESPIE, P.J., and RODGERS, JONES and SMITH, JJ., concur.

ON PETITION FOR REHEARING
JONES, Justice.
Attorneys for appellee have filed a vigorous and almost vehement petition for rehearing, asserting the Court in its opinion decided the case upon an issue that was neither raised nor argued on the original hearing.
In stating the reasons for holding that instruction number 9 was erroneous, it was necessary for the Court to refer to section 8185, Mississippi Code 1942 Annotated (1956). This Court however is not restricted in stating for the benefit of the bar the reasons for its decision, although such reasons may include facts, law, or a matter that was not presented on the original hearing.
On the original trial appellant requested a peremptory instruction because of a violation of section 8185. The lower court refused to grant this instruction and appellant did not assign the refusal as error. However, this Court, in determining the issues presented as to the correctness of the instructions involved, properly considered this statute.
Appellee contends on this petition for rehearing that this statute, which prohibits the driving to the left side of the roadway when approaching within 100 feet of an intersection, is not applicable because appellee drove to the left side of the road more than 100 feet from the intersection. Appellee, in so asserting, relies upon the Florida case of Clark v. Sumner, 72 So.2d 375 (1954) and the case of Lemkie v. Boice, 329 Mich. 278, 45 N.W.2d 288 (1951). In the Florida case it was stated the plaintiff was on the left side of the highway at the time of the accident but that there was no evidence in the record to show conclusively she had made the turn to the left hand of the highway while at a point within 100 feet of the place of impact where the defendant was attempting to make a left turn into a side road.
In the Michigan case, the plaintiff, at a point 200-300 feet from an intersection turned his truck to the left side of the highway, passed one car, and kept on the left side of the highway to pass the car of the defendant. The defendant attempted to make a left turn resulting in a collision close to the intersection. Both the Florida case and the Michigan case held that the statutes were not applicable unless the one *199 charged with a violation thereof had actually turned into the left lane when he was within 100 feet of the intersection.
These courts applying a strict interpretation to the statutes involved, point out that, if the legislatures had intended that driving on the left side of the highway was prohibited, it would have been easy to write the statutes that way. When the legislatures used the word "driven to" the left side of the highway, it was intended that the turning into the left side of the highway was required to be within 100 feet of the intersection.
The courts are apparently divided on the question, but the only cases that we have been able to find sustaining the position of appellee are the two cases hereinbefore mentioned. See Am.Jur.2d Automobiles and Highway Traffic § 222 (1963).
In Clark v. Mask, 232 Miss. 65, 98 So.2d 467 (1957), this Court construed the statute as prohibiting an attempt to pass within 100 feet of the intersection. Nothing was said to require proof that the driver sought to be charged actually entered the left hand side of the road while within 100 feet of the intersection. This was also the construction in McCorkle v. United Gas Pipe Line Co., 253 Miss. 169, 175 So.2d 480 (1965).
Section 8185 was intended to avoid the hazards inherent in attempting to pass another vehicle near an intersection. Section (a) thereof provides:
No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle * * *. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction.
That part of the statute plus the part directly involved here manifest the intention of the legislature to prohibit a car from being on the left hand side of the road undertaking to pass another car going in the same direction while within 100 feet of any hazards. The entire statute puts emphasis upon the prohibiting of overtaking and passing another car headed in the same direction except at a safe distance from places where hazards and dangers might be anticipated.
Section 8181, Mississippi Code 1942 Annotated (1956) requires that upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway except under circumstances therein provided.
Carrying to its logical conclusion the construction of the statutes by the Florida and Michigan courts that the turning into the left lane must be within 100 feet of the intersection, the driver of an automobile might argue he was not responsible under this statute for an accident near or in an intersection because he was traveling on the left side of the road in contravention of section 8181 for a period of one mile before he got to the intersection. In other words he might plead guilty to the violation of one statute in order to escape the applicability of another. We do not think any such construction was intended by the legislature nor do we think it would be a reasonable construction of the statute here involved.
Our statute is different from the statutes involved in the Florida and Michigan cases in that there is an emphasis in our statute on the overtaking and passing of cars, whereas in the other statutes there is no mention of overtaking and passing. These statutes simply prohibit the car being driven to the left within the prescribed distance.
Another illustration is that a car within 150 feet of an intersection might turn to the left and enter the left lane in order to pass a car in front of it which was traveling at the same or a greater rate of speed than *200 the one undertaking to pass. In our conception of matters it would be irreconcilable with sound construction of the statute to say in such instance that the statute would not apply because a man entered the left lane more than 100 feet from the intersection. As stated by the Alabama court, in Greer v. Marriott, 27 Ala.App. 108, 110, 167 So. 597, 598 (1936):
[The] passing of one car by another going in the same direction is one continuing act, from the time the rear car pulls out of the direct lane of travel in the rear of the car to be passed, up to and including the completion of the passing and the passing car is again in its proper lane.
The Court of Civil Appeals of Texas decided this question contrary to appellee's position in Harbert v. Mathis, 230 S.W.2d 380 (1950). In that case the Texas statute is quoted. Their statute, Vernon's Ann. Civ.St. art. 6701d, § 57, provides:
[N]o vehicle shall at any time be driven to the left side of the roadway * * * when approaching within one hundred (100) feet of or traversing any intersection or railroad grade crossing * * *.
That court said:
The fact that appellant began his attempt to pass appellee as far as 115 feet from the intersection did not relieve him of the duty to observe the provisions of the statute and refrain from driving on the left-hand side of the road within 100 feet of the intersection. Id. at 382.
The court further said:
The object of Section 57 was to eliminate the hazard of cars being operated on the left side of the roadways under certain conditions and the object of Section 57(a) 2 was to eliminate such hazard within 100 feet of intersections, and was for the benefit and protection of all persons and vehicles using the roadway at or near the intersection regardless of the direction they were traveling. Id. at 383.
It will be noticed that this statute was more like the Florida and Michigan statute in that there was no provision regarding the overtaking and passing of cars. It was a simple bar to the right to have the car "driven to the left side of the roadway" when approaching within 100 feet of or traversing any intersection.
Iowa, in 1950, had a statute, section 321.304, Codes 1946 and 1950, I.C.A. which provided that "No vehicle shall in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway * * *. When approaching within one hundred feet of or traversing any intersection * * *." Young v. Blue Line Storage Co., 242 Iowa 125, 44 N.W.2d 391 (1950). That court stated:
The theory of the defendant as shown in its argument is that when approaching "within 100 feet" it can only mean within the distance of 100 feet the driver should not start to pass, and that it does not mean that if a collision happens within 100 feet of the intersection the individual who is passing is guilty of negligence. We disagree with the defendant in this respect. The statute itself indicates the contrary. It says, "when approaching within 100 feet" of an intersection. Therefore, no matter when defendant's truck was started to be driven, if, when within 100 feet of the intersection it remained on the left side of the highway it was traversing, it violated this statute. Id. at 133, 44 N.W.2d at 396.
The Iowa court also cites and quotes from a Washington case, American Products Co. v. Villwock et al., 7 Wash.2d 246, 109 P.2d 570, 132 A.L.R. 1010. In that case, the Washington court was discussing a similar *201 statute with reference to approaching curves. The construction of the Washington court as to that statute coincides with the Iowa and Texas decisions. Compare Holland v. Edelblute, 179 Va. 685, 20 S.E.2d 506 (1942).
We are here dealing with a case where, as shown by the original opinion, there was no reason for the appellee in the exercise of reasonable or ordinary care to be unaware of the intersection. We are not here concerned with a motorist who is unaware of the existence of an intersection and where the existence of the intersection is not discoverable by the exercise of ordinary care.
The petition for rehearing is denied.
Petition for rehearing denied.
GILLESPIE, P.J., and RODGERS, BRADY and SMITH, JJ., concur.