BROOM, Justice
(dissenting):
Contrary to the majority in this case, my studied opinion is that the jury was appropriately and correctly permitted to decide the issues of this rear-end collision case on conflicting evidence. Accordingly, I must dissent.
Largely for the reason that he was struck from the rear, Sprayberry is exonerated from liability. My view is that this case is not just another rear-end collision because at issue is the application of the often misunderstood sudden emergency doctrine to circumstances involving a very heavy and sophisticated mechanized unit driven on a heavily traveled four-lane highway. The plaintiff, Marsha Blount (a guest passenger of her husband who was killed in the accident) was absolutely free of any contributory negligence, and the effect of the majority decision is to deny her any compensation for her catastrophic injuries although there was evidence upon which the jury could find and did find that Sprayberry’s negligence either caused or contributed to the collision. A salient feature of the case is the plaintiff’s theory that Sprayberry (faced with malfunction of his brake system) did not exercise reasonable care to remove his disabled unit as far to the right as was reasonable before the vehicles were in collision. Regardless of whether Mississippi Code Annotated § 68-3-903(1) (1972), which requires a driver if stopped or parked to remove the vehicle “as far to the right as reasonably practical,” applies to Sprayberry here, he was at least under a common-law duty “not to endanger the safety of other persons using [the highway].” Filgo v. Crider, 251 Miss. 234, 168 So.2d 805 (1964); 60A C.J.S. Motor Vehicles § 247 (1969).
In 3 Blashfield, Automobile Law and Practice § 116.4 (3d Ed. 1965), it is stated:
The questions of negligence in parking or stopping cars on the street or highway, and whether or not such acts proximately cause the damages complained of are usually questions of fact for the jury to determine ... on conflicting evidence or where different inferences may be drawn, the position of a vehicle when struck by an automobile, with respect to the edge of the pavement and the ditch beside the road, and the driver’s negligence in not having turned farther to the right on the shoulder or berm of the road, may be questions for the determination of the jury. .
The majority relies on Fant v. Commercial Carriers, 210 Miss. 474, 49 So.2d 887 (1951), which upheld a peremptory instruction for the defendant truck driver and his employer, but that case differs from the present case in several respects. In Fant, the truck driver to pull off to the right would have had to risk placing his rig upon “a wet shoulder.” No such risk confronted Spray-berry here. In Fant, two automobiles “drew up behind” the tractor-tráiler unit and apparently followed it for a short time before the collision. Apparently in Fant the truck driver had no intention of stopping as Sprayberry did.
Regardless of its distinguishable facts, Fant deals with a sudden emergency situation. Applying its. rationale as to the sudden emergency feature, we must decide if (as announced in Fant) “it would be unjust to characterize his [Sprayberry’s] course as negligent or to permit it to be so found.” Phillips v. Delta Motor Lines, Inc., 235 Miss. 1, 108 So.2d 409 (1959), held that a sudden emergency did not impose on a driver a duty to exercise such care “as a reasonably prudent and capable driver would have used under the unusual circumstances . . .” In Phillips, we said:
Whether Foster was negligent in failing to exercise such care, after his air brakes gave way, as a reasonably prudent and capable driver would have used under the unusual circumstances to avoid an accident, was a question for the jury to decide under proper instructions of the court., Moore v. Taggart, 233 Miss. 389, 102 So.2d 333 (1958). (Emphasis added.) (235 Miss, at 13, 108 So.2d at 414.)
*1296 Virgil Gillespie in The Sudden Emergency Doctrine, 36 Mississippi Law Journal 392, 407 (1965), states that “the reaction of the actor after the emergency arose” is the heart of the doctrine. He correctly concludes that the evaluation of the actor’s conduct after the emergency arose is “peculiarly one for the jury.” In this case by Instruction No. 39, appellants themselves recognized and put before the jury the sudden emergency doetrine, and thereby the jury was permitted to evaluate Sprayber-ry’s action or inaction in the light of the exigencies confronting him just before the accident occurred. While the issue is very close, it was not unjust to permit the jury to find as it did that Sprayberry was negligent in the way he reacted or failed to react. The jury had before it evidence that when deposed before trial, Sprayberry testified he was traveling five miles per hour when the collision occurred, while at trial he gave his speed at five or ten miles per hour. In his deposition, he stated that he traveled 350 to 400 feet from the time he heard air escape until the brakes set, but at trial he reduced the distance to “75 to 100 feet.” Confronted with such impeachment of the testimony of Sprayberry, the jury weighed his testimony that he turned on his flasher lights against the testimony of Lott who said that when he arrived at the scene he saw that the rear lights were on the trailer, but that the flasher lights were not.
It is to be noted that just after malfunction of his air brake line, Sprayberry looked in his rear view mirror but did not see the Blount car approaching. It is arguable that he should have seen it. Viewed differently, one may say otherwise because the car may have been in the highway’s dip, but Spray-berry had knowledge of the dip, having traveled the road many times. In this situation he elected (according to his. testimony) to turn on the flasher lights and not to use the foot controlled brake to reduce his speed and activate his stop light. Summarized, his testimony shows that in reality after turning on his flasher lights he did nothing but “wait for anything that might happen.” It is also to be noted that (according to him) when he had traveled over four hundred feet after the emergency arose, he had steered his front tractor wheels “around three feet” onto the shoulder of the highway and the back trailer wheels “a foot and a half to two feet” (disputed by Lott) onto the highway shoulder. Pictures in the record clearly show that it may have been possible and practical for Sprayberry to have guided the unit more nearly off the highway had he applied the brakes and turned to the right earlier than he did.
It was suggested that one driving down a highway, such as Sprayberry, should not be held to assume or anticipate he would be rear-ended by another vehicle. Equally plausible is the suggestion that a driver (especially of a large unit with sophisticated equipment) should assume that his equipment will sometimes malfunction, creating a perilous situation (as happened here) to which he must appropriately react. Should he have seen the Blount vehicle in his rear view mirror? Did he reasonably perform his duty considered in the context of whatever opportunity he had to put his foot on the brake activating his rear stop lights and signaling his intent to stop, as well as slowing down before automatic braking began? Could he and should he have removed the unit more nearly off the highway before the collision, giving due attention to the topography, width, and condition of the highway and its shoulders, along with the size and condition of the unit? These crucial issues on liability were properly submitted to the jury for resolution. The jury verdict against appellants was adequately supported by the evidence.
Logic compels me to differ from the majority opinion that states it was immaterial whether or not Sprayberry should have activated his stop light by pressing the brake •pedal. The thesis of the majority in this respect seems to be that there were already “other lights on the rear of the vehicle.” One would glean from the majority that activation of the brake lights did not reflect on the question of Sprayberry’s negligence even though the opinion admits that use of *1297 the brake pedal would have made “the stop light brighter.” Intensification of the brightness of the stop light is one important reason to press the brake pedal — such brightness puts one following the lead vehicle on notice that not only is the leading vehicle some distance ahead, but such vehicle is about to stop. In night driving, when distances from vehicle to vehicle are so difficult to judge, use of such stop lights becomes more appropriate and legally significant. Upon the facts of this case, failure to activate the stop lights is a relevant factor for the jury to consider in deciding the question of negligence.
As I perceive this case, the majority attaches no legal import to the testimony of Policeman Lott who said that shortly after the unfortunate collision he arrived at the scene and found that the rear wheels (of appellants’ unit) were still on the pavement after the collision occurred. The jury had the prerogative of believing or disbelieving Lott, and obviously chose to believe him. It chose to reject the testimony of Sprayberry, whose testimony at the trial differed from his prior statements made when deposed.
Though this is a very close case on the evidence and on the law, I simply cannot agree that it should not have gone to the jury or that the jury’s verdict was not supported by sufficient evidence. Affirmance should be adjudged.
PATTERSON, P. J., and LEE, J., join in this dissent.